(Decided 29th October, 1880.)

THE BALTIMORE AND POTOMAC RAIL ROAD COMPANY *vs.* STATE OF MARYLAND, use of GEORGE W. STANSBURY.

*Negligence—When the same is a question of Law, and when a question of Fact—Case where the question of Contributory negligence was decided by the Court, and not allowed to be submitted to the Jury.*

What constitutes negligence is generally a question of fact, and as such is usually submitted to the jury; the Courts being reluctant, where the facts are complicated, and inferences are to be drawn, and the evidence is contradictory, to withdraw such questions from their decision.

But it being the province of the Court to determine the legal sufficiency of evidence, it sometimes becomes their duty (where the main facts are uncontroverted) to decide whether the facts offered in evidence are such as would constitute such negligence in law as would debar the plaintiff's right to recover.

Where the uncontroverted evidence proved that the deceased, (to recover damages for whose death the defendant was sued,) was improperly on the track of the defendant, that he voluntarily exposed himself to the peril, with full knowledge of the risk, and might, if he had used his eyes and ears, have seen and heard the approaching train, long before it struck him; and the only mate-

Balto. & Poto. R. R. Co. *vs.* State, use of Stansbury.

rial conflict of evidence, was as·to the giving of the signals upon the approach of the cars, it was HELD :

That the deceased, having directly contributed to his own death, the plaintiff had no cause of action; and it was error to reject a prayer of the defendant to that effect.

APPEAL from the Circuit Court for Baltimore County.

The case is stated in the opinion of the Court.

*Exception.*—At the trial the plaintiff offered the two following prayers:

1. If the jury find from the evidence, that on or about the 19th day of June, 1876, Albert Stansbury was killed by the locomotive and cars of the defendant, while operated by its agents on its road, and that the equitable plaintiff, to wit, George W. Stansbury, is related to him in the manner set forth in the declaration, and that the said killing resulted directly from the want of ordinary care and prudence on the part of the agents of the defendant, and not from the want of such care and prudence on the part of the deceased as ought, under all the circumstances of the case, to have been reasonably expected from one of his age and intelligence, nor from the want of ordinary care and prudence on the part of his parents, or either of them, directly contributing to the misfortune, then their verdict must be for the plaintiff.

2. Even if the jury do believe that the said Albert was guilty of the want of such care and prudence, as ought, under all the circumstances of the case, to have been reasonably expected from one of his age and intelligence, in lying, or sitting along, or near the railroad track of the defendant, or that his parents (or either of them) were guilty of the want of ordinary care and prudence in allowing him to attend to the cows, in the manner testified to by the witnesses ; still, if they further find that the

650 MARYLAND REPORTS.

Balto. & Poto. R. R. Co. *vs.* State, use of Stansbury.

agents of the defendant did not keep a reasonable look-out, and did not give reasonable and usual signals of the train's approach, and did not exercise ordinary care and prudence in the running of the train; and that if they had kept a reasonable look-out, and had given reasonable and usual signals of the train's approach, and had exercised ordinary care and prudence in the running of the train, the killing would not have occurred, their verdict must be for the plaintiff, provided they find the other facts set out in the first prayer of the plaintiff.

And the defendant offered the six following prayers :

1. If the jury shall find that the deceased had the intelligence, experience and capacity to take care of himself, and knowledge of defendant's road, testified to by his father, and was killed under the circumstances and in the mode testified to by the witness, Mrs. Schimmenant, or in the mode, and under the circumstances testified to by the defendant's engineer, then there was such contributory negligence, on the part of the deceased, as will prevent, under the circumstances of this case, the recovery of the plaintiff, and the verdict of the jury must be for the defendant.

2. That there is no sufficient evidence that the injury to the deceased was caused by the negligence, or the want of ordinary care, on the part of the defendant, or its agent, and that, therefore, the verdict of the jury must be for the defendant.

3. That the rules of the defendant, offered in evidence by the plaintiff in reference to the ringing of the bell and blowing the whistle when approaching a road crossing, are designed to give notice to those using such road, and therefore the jury are not to take the same into consideration in determining whether the agents of the defendant were guilty of negligence or the want of ordinary care on the occasion of the injury to the deceased.

4. If the jury shall find from the evidence that the deceased, at the time of the injuries to him, had the intel-

ligence, capacity for taking care of himself, experience and knowledge of defendant's railroad, as testified to by his father and the witness, Mrs. Schimmenant, and that on the day in question he was sitting or lying on the bank, alongside of and near to the track of the defendant's road, at a point about one hundred or one hundred and fifty feet from the crossing of the Sulphur Spring Road, and on the engineer's side of the track, and that the engineer was using ordinary care in keeping a look-out ahead as he was approaching the said point, and was the first person in charge of the train to see the deceased, and that when so seen he was in a position in which he would not have been struck, and that as soon as the said engineer discovered the position of the deceased, he at once, and as soon as it was possible to do so, did all he could to stop the train by applying the air-brake and reversing his engine, and also, as soon as possible, sounded his alarm whistle, and that, notwithstanding such efforts, the deceased was struck by the pilot of the engine, then the plaintiff is not entitled to recover, although the jury shall find from the evidence that no bell was rung nor whistle sounded as a signal of approach to the said road crossing.

5.  If the jury shall find from the evidence the facts set forth in the defendant's fourth prayer, and that when the engineer of the defendant's train first discovered the deceased and his companion they were lying alongside of the track, and in a position in which they were clear of the engine and cars, and that when he so first discovered them he thought they were asleep, and shall also find that when he so first discovered them they were objects lying on the bank alongside of the track, he could have stopped the train before reaching them, yet the plaintiff is not entitled to recover; provided the jury shall find that as soon as the said engineer discovered that said objects were boys, he did all he could by the application of his air-brake and the *reversal* of his engine, and giving

alarm whistle to avoid striking said boys; and provided they shall also find the said deceased had the intelligence, experience, capacity to take care of himself, and knowledge of defendant's railroad, testified to by his father, and had been sent by his mother to keep his father's cows from the railroad, and was, as said train was approaching. sitting or lying alongside of said track, and so close to it as to be struck by the passing engine, or got up from the position in which he had been sitting or lying, clear of the track, and went against the engine as it was passing, and was struck.

6. If, under the instructions of the Court, the jury should find a verdict for the plaintiff, then, in assessing the damages, they are not to take into consideration the mental pain and suffering of the said George W. Stansbury, in consequence of the death of the said Albert, and are not to give against the defendant vindictive damages, but are to give to the plaintiff for the use of the said George W. Stansbury, such sum of money as they may believe, from all the evidence in the cause, will be an adequate compensation to him for the loss of his said son's services from the time of his death, to the period when, if he had lived, he would have attained the age of twenty-one years.

The Court, (GRASON and YELLOTT, J.,) granted the plaintiff's prayers, as also the defendant's, except its first and second, which were rejected. The defendant excepted, and prosecuted this appeal, the verdict and judgment having been for the plaintiff.

The cause was argued before BARTOL, C. J., BOWIE, MILLER, ALVEY and IRVING, J.

*Bernard Carter,* for the appellant.

*James A. L. McClure,* for the appellee.

Balto. & Poto. R. R. Co. *vs.* State, use of Stansbury.

Bowie, J., delivered the opinion of the Court,

The cause of action in this case is the death of the appellee's son by collision with the cars of the appellant. The appellee offered evidence tending to prove that his son, a lad about twelve years of age, on the 19th of June, 1876, whilst sitting or lying down with a companion, on the edge of the embankment of the appellant's railroad, "just at the end of the cross-ties," watching the cows of his father, was struck by the engine of a train of the appellant, without warning and killed; that no notice was given of the approach of the train by blowing the whistle; that the railroad passes through the land of the appellee, who was engaged in the milk business, and the boy who was killed drove his wagon, and when at home watched the cows grazing in the meadow of his father adjoining the railroad, to keep them off of it, and was so engaged when the accident occurred.

It was further proved, that the railroad track at the place of the accident and for the distance of half a mile, was perfectly straight, open and unobstructed in view; that the grade was upward, the hour about three p. m.; the boy was intelligent, and capable of managing a horse and wagon.

On the part of the appellant, evidence was offered tending to prove that the train was an express, running at the rate of thirty-five miles per hour; that the engineer was on the look-out, that he blew the whistle at the signal post as they approached the Sulphur Spring Station (near which the accident occurred) and did not see the children until it was too late to stop the train; when he saw them, the one killed was on his hands and knees moving towards the track.

From this synopsis it is apparent the liability of the appellant depends upon the question whether the injury was caused by the want of due care upon the part of the appellant or by the negligence of the son of the appellee?

The prayers submitted on the part of the appellee maintained substantially the following propositions:

1st. If the death of the boy resulted directly from the want of ordinary care and prudence on the part of the defendant's agents, and not from the want of care and prudence on the part of the deceased, directly or indirectly, contributing to the misfortune, then the verdict must be for the plaintiff.

2ndly. If the deceased was guilty of the want of such care as ought under all the circumstances of the case to have been expected of him, still, if the agents of the defendant did not keep a reasonable look-out, and did not give the usual and reasonable signals of the train's approach, and did not exercise ordinary care in the running of the train, by the use of which the accident would not have occurred or might have been avoided, the verdict must be for the plaintiff.

The appellant's prayers virtually affirmed,

1st. That there was such contributory negligence on the part of the deceased as deprived the appellee of all right of recovery.

2nd. That there was no legally sufficient evidence to be submitted to the jury that the injury was caused by the negligence or want of ordinary care of the defendant's agents.

The effect of these prayers, if granted, would have been to withdraw the case from the consideration of the jury, and to decide it by the Court, as upon a demurrer to evidence.

The refusal of the prayers of the defendant, and the granting of those of the plaintiff, is the ground of this appeal.

There are two classes of cases of. negligence, in one of which the question is submitted to the jury, and in the other, it is decided by the Court.

It is difficult in many cases to determine to which tribunal the question of negligence belongs, so close is the

OCTOBER TERM, 1880. 655

Balto. & Poto. R. R. Co. *vs.* State, use of Stansbury.

resemblance in many of their features and so minute the difference of circumstances; yet the distinction is well established, and the most recent decisions of this Court, sustained by the authority of other tribunals, English and American, seem to include the present, as a question of law.

What constitutes negligence is generally a question of fact, and as such is usually submitted to the jury; the Courts being reluctant where the facts are complicated and inferences to be drawn and the evidence contradictory to withdraw such questions from their decision. *Price's Case,* 29 *Md.,* 420; *Fryer's Case,* 30 *Md.,* 47; *Trainor's Case,* 33 *Md.,* 542; *Mulligan's Case,* 45 *Md.,* 486.

But it being the province of the Court to determine the legal sufficiency of evidence, it sometimes becomes their duty (where the main facts are uncontroverted) to decide whether the facts offered in evidence are such as would constitute such negligence in law as would debar the plaintiff's right to recover. *Wilkinson's Case,* 30 *Md.,* 224; *Andrews' Case,* 39 *Md.,* 329. In *Fitzpatrick's Case,* 35 *Md.,* 32, it was said by this Court that many cases could be suggested where the question of negligence (of a railroad company sued for damages for injuries sustained by its alleged negligence) could properly be one of law for the Court, though they are not of frequent occurrence; such cases always present some prominent and decisive act in regard to the effect and character of which no room is left for ordinary minds to differ.

Again, in 38 *Md.,* 588, it was held, that legal insufficiency of evidence to prove negligence "is a question of law of which the Court is the exclusive judge; and cases do occur where the proof of negligence is so slight and inconclusive in its nature as to demand from the Court an instruction as to its legal insufficiency to prove negligence in order to prevent the jury from indulging in wild speculation or irrational conjecture." *Lewis' Case,* 38 *Md.,* 588; *Andrews' Case,* 39 *Md.,* 329.

The Supreme Court of Massachusetts in the case of *Butterfield vs. Western Railroad Corporation*, 10 *Allen*, 5ȝ2, commenting on the facts of that case, and the province or duty of the Court in such cases remarks:

"By due care is meant reasonable care adapted to the circumstances of the case. The crossing of a place known to be dangerous, as a railroad track frequently is, by reason of the passing trains, reasonably requires a high degree of watchfulness and attention. Before attempting to cross, a man should make a reasonable use of his sense of sight as well as of hearing, in order to ascertain whether he will expose himself to a collision. If he fails to use his senses without reasonable excuse, he fails to use reasonable care," and in support of this position, refers to *Shaw vs. Boston & Worcester R. R.*, 8 *Gray*, 73; *Warren vs. Fitchburg R. R.*, 8 *Allen*, 227; *Commonwealth vs. Fitchburg R. R.*, *Ibid.*, 189; *Stevens vs. Oswego R. R.*, 18 *N. Y.*, 422.

Referring to the submission of the evidence to the jury, the Court declares, that "in *Toomey vs. The London, etc. Railroad*, 3 *C. B.*, (*N. S.*) 146, it was said, that a mere scintilla of evidence, is not sufficient to authorize a Judge to submit the question of the defendant's negligence to a jury; but there must be evidence upon which a jury may reasonably and properly infer that there was negligence on his part." In the latest case upon this subject, this Court held "it was incumbent on the plaintiff to prove that the injury was caused *entirely by the negligence or default of the defendant's agents*, and it must not appear from the evidence that want of ordinary care and prudence on the part of the deceased directly contributed to the cause of death," citing *Foy's Case*, 47 *Md.*, 76; *Lewis' Case*, 38 *Md.*, 599; *Northern Central R. Co. vs. State, use of Burns, ante* 113. The uncontroverted evidence in this case proves that the deceased was improperly on the track of the defendant, that he voluntarily exposed himself to the peril, with full

knowledge of the risk, and might, if he had used his ears and eyes, have heard and seen the approaching train, long before it struck him; thus directly contributing to his own death.

The only material conflict of evidence in the present instance is as to the giving of the signals upon the approach of the cars, as to which the language of the Supreme Court, in the case of *Houston,* 95 *U. S.,* 701, is very pertinent and conclusive.

Mr. Justice FIELD, delivering the opinion of the Court, says: "If the positions most advantageous for the plaintiff be assumed as correct, that the train was moving at an unusual rate of speed, its bell not rung, and its whistle not sounded, it is still difficult to see on what ground the accident can be attributed solely to the 'negligence, unskilfulness, or criminal intent' of the defendant's engineer. Had the train been moving at an ordinary rate of speed, it would have been impossible for him to stop the engine when within four feet of the deceased. And she was at the time on the private right of way of the company, where she had no right to be. But, aside from this fact, the failure of the engineer to sound the whistle or ring the bell, if such were the fact, did not relieve the deceased from the necessity of taking ordinary precautions for her safety."

"Negligence of the company's employés in these particulars was no excuse for negligence on her part. She was bound to listen and to look before attempting to cross the railroad track, in order to avoid an approaching train, and not to walk carelessly into a place of possible danger. Had she used her senses, she could not have failed both to hear and to see the train which was coming."

The language above quoted is adopted and incorporated by this Court in its opinion in *Burns' Case,* above cited. Much as we lament the melancholy event which deprived the father of an intelligent, industrious, and estimable son,

we are compelled by the current of authorities to decide
that the deceased, having directly contributed to his own
death, the appellee has no cause of action, and the Court
below, having rejected the appellant's prayer to that effect,
the judgment below must be reversed.

*Judgment reversed.*

(Decided 29th October, 1880.)