(Decided December 20th, 1898.)

---

THE PIKESVILLE, REISTERSTOWN AND
EMORY GROVE RAILROAD OF BALTIMORE
COUNTY *vs.* STATE OF MARYLAND, use of
JOHN E. RUSSELL AND SALLIE A. RUSSELL.

> *Negligence—Injury to Conductor from Trolley Pole excep-*
> *tionally near Foot-board of Car—Contributory Negli-*
> *gence—Risks of Employment—Damages Recoverable*
> *by Parent for Death of Adult Son.*

The deceased was a conductor on defendant's summer car on a
suburban electric railway. While standing on the foot-board
collecting fares in the course of his duty, he was struck by a
pole which supported the trolley wire and killed. The pole
which struck deceased was 2 ft. 1 in. from the track while
the other poles were located from 2 ft. 5 in. to 2 ft. 9 in.

from the track. The foot-board of the car projected 15 in. beyond the rail. When deceased was struck he was leaning in the car receiving the fare from a passenger. It was unsafe to collect fares at that point from the foot-board on the other side of the car. No instructions had been given deceased as to the side from which fares were to be collected, and he was killed on the day he entered defendant's employment. *Held*, that the risk of employment arising from the proximity of the poles which were properly located was assumed by the deceased, but he did not assume the risk arising from the dangerous, improper and exceptional location of the pole by which he was struck, of which location he had no knowledge and could not have informed himself by the exercise of reasonable care, and that consequently there was evidence from which it could. be inferred that the injury was caused by the defendant's negligence in the location of the pole and in not warning deceased of the danger, and that there was no contributory negligence on his part.

In an action by the parents to recover damages for the death of their adult son when the plaintiffs have received pecuniary benefit from him since his majority and there was a reasonable probability that the same would have continued, then the plaintiffs are entitled to recover for such past losses and prospective damages according to the son's probability of life as the jury may find to be the direct consequence of his death.

Appeal from the Superior Court of Baltimore City (Ritchie, J.). The following prayers were offered at the trial:

*Plaintiffs' 1st Prayer.*—If the jury find that the defendant owned and operated an electric railroad between Pikesville and Emory Grove, Baltimore County, and that part of the structure of said railroad consisted of upright poles placed at certain intervals alongside, and for the length of the track of said railroad, and that the defendant maintained as part of its railway structure a certain pole, No. 300, at a distance of two feet and one inch from the edge of the nearer railroad track, and that Frederick L. Russell, a son of the equitable plaintiffs was in the

employ of the defendant as a conductor, and while so engaged in the line of his employment as a conductor on car No. 10, belonging to the defendant, and on the first day of his employment, and while standing on the foot-board of said car attending to his duty of collecting fares, and shall find that in the collection of his fares it was necessary to pass along the foot-board on either one side or the other, and shall find that his body as said car passed said pole No. 300, came in contact with the same in consequence of the dangerous and unsafe position of said pole (if the jury find the same was dangerous and unsafe), and in consequence of such dangerous and unsafe position of said pole the said Frederick L. Russell was thus killed; and if the jury shall further find that the deceased was ignorant of the unsafe and dangerous position of said pole at said place, if they find the same was dangerous and unsafe, and could not by the use of ordinary care and prudence on his part have known the same; and shall further find that at the time of said injury the deceased was using due and ordinary care and caution on his part, and that the side opposite said pole was unsafe and dangerous for the collection of fares along the section of the track at which the accident occurred, then their verdict should be for the plaintiff.— (*Granted.*)

*Plaintiffs' 5th Prayer.*—If the jury find for the plaintiffs and further find that they had received pecuniary benefits and advantages from their said son from time to time since his majority and that there was a reasonable probability that such pecuniary benefits and advantages would have continued had he lived, then in assessing damages they are to estimate the reasonable probabilty of the life of the deceased and may award to the equitable plaintiffs such pecuniary damages not only for past losses but for such prospective damages as the jury may find they have respectively suffered or will suffer as a direct consequence of the death of said Frederick L. Russell.—(*Granted as modified.*)

*Defendant's 3d Prayer.*—That the only obligation upon the defendant company to its employees acting as

conductors upon its cars in constructing its cars and locating its trolley poles, was to so construct said cars and locate said poles as to enable said conductors to discharge their duties, including the collection of fares, with safety and without being struck by said poles by the exercise of ordinary care and prudence, and the plaintiff has offered no evidence to the jury legally sufficient to enable them to find that said cars were so negligently constructed, or said poles so negligently located, that the said employees could not discharge their said duties with safety by the use of ordinary care and prudence on their part.—(*Rejected.*)

*Defendant's 4th Prayer.*—The defendant company was under no obligation to locate the trolley pole mentioned in the declaration far enough from its track to enable its conductors to collect fares from the side next the poles without leaning in close to the side of the car as they passed said pole, and when Russell went into the service of the company he assumed not only the usual risks incident to such employment, but all other risks which were visible and apparent, even though the existence of said risks might have been prevented by the exercise of greater care or skill in the construction of said road, and, inasmuch as it appears from the undisputed evidence in this case that all said trolley poles were located so close to the track as to make it plainly and obviously dangerous for a man to collect the fares from the foot-board or platform on that side of the car without taking proper care to avoid striking them, that Russell's attention had been called to this change several times before the accident; that it was not at all an unusual thing, but the contrary in trolley railway construction, to have the distance between the various poles and the track vary by several inches; the fact that pole No. 300 was closer by several inches than other poles in its immediate vicinity is not material, the risk of being struck by said pole being one which Russell must be deemed to have assumed under the circumstances.—(*Rejected.*)

*Defendant's 5th Prayer.*—The fact that the trolley poles generally were so close to the track of the defend-

ant's road as to expose a man standing on the foot-board or platform next to them to danger of being struck being obvious and plain, and Russell's attention having been specially called to it, he had no right to assume that all said poles would be located at precisely the said distances from the tracks without taking care to observe whether they were not; on the contrary, it was his duty to look carefully and observe and inform himself as to what the facts might be in that regard, and the defendant cannot be held liable for the consequences of his having failed to do so.—(*Rejected.*)

*Defendant's 6th Prayer.*—If the jury find from the evidence that Russell could have avoided the accident which caused his death by keeping his body a little closer to the car as it passed post No. 300, then their verdict must be for the defendant.—(*Rejected.*)

*Defendant's 7th Prayer.*—If the jury believe that Russell could have avoided striking the post mentioned in the declaration (No. 300), by exercising such degree of care as a reasonably prudent man would have exercised under like circumstances, then the plaintiff is not entitled to recover, and their verdict should be for the defendant upon the issues joined.—(*Granted.*)

*Defendant's 8th Prayer.*—The jury cannot find for the plaintiff unless they find from the evidence that the death of Russell was directly and exclusively due to the failure of the defendant company to use ordinary care to prevent it, and not in any degree to carelessness that is lack of ordinary care on his part.—(*Granted.*)

*Defendant's 9th Prayer.*—That under the pleadings and evidence in this cause the plaintiff is not entitled to recover because there is no evidence legally sufficient to warrant the jury in finding that the equitable plaintiffs have suffered any pecuniary loss because of the death of their son.—(*Rejected.*)

*Defendant's 10th Prayer.*—That no evidence has been offered by plaintiffs legally sufficient to warrant the jury in finding that the father and mother, the equitable plaintiffs in this cause, have sustained any substantial pecuniary loss from the death of their son, and no award

of damages beyond a nominal amount can be given said equitable plaintiffs, even if the verdict of the jury should be for plaintiff.—(*Rejected.*)

*Defendant's 11th Prayer.*—That no allowance can be made in this case on account of the minor children of the equitable plaintiffs, or because of any thing given or furnished to them by the deceased, or because of any expectation which they may have or might have had as to anything the deaceased would do for them.— (*Granted.*)

*Defendant's 13th Prayer.*—That a son over the age of 21 years is under no legal obligation to support or maintain his parents, or either of them, or to do anything for them, and if under the instructions of the Court they shall find for the plaintiff, and shall also find from the evidence that said Russell, at the time of his death, was more than 21 years of age, then in estimating the damages sustained by the equitable plaintiffs they must exclude any claim for damages on the part of the father and mother, or either of them, unless they shall further find that they were dependent upon their son for support and maintenance.—(*Rejected.*)

*Defendant's 15th Prayer.*—If the jury find from the evidence that there were no obstructions on the side of the road opposite to the trolley poles in the neighborhood of pole No. 300, which would have interfered in any material degree with the collection of fares from that side of the car, then in selecting the side next to the poles for the collection of the fares, the deceased Russell took the risk of being struck by said trolley poles and was guilty of such contributory negligence as disentitles the plaintiffs from recovering in this case.— (*Rejected.*)

The jury rendered a verdict for plaintiffs for $6,000, of which $4,000 was apportioned to Mrs. Russell and $2,000 to Mr. Russell. Subsequently the plaintiffs accepted a reduction of the verdict to $4,000, of which $2,500 was apportioned to Mrs. Russell and $1,500 to Mr. Russell, under an order of Court granting a new trial unless such abatement be made.

The cause was argued before McSHERRY, C. J., FOW-LER, BRISCOE, PAGE, BOYD, PEARCE and SCHMUCKER, JJ.

*Thos. R. Clendinen* and *William L. Marbury,* for the appellant.

*R. B. Tippett* and *W. Sherman Bansemer* (with whom was *J. E. Tippett* on the brief), for the appellees.

PAGE, J., delivered the opinion of the Court.

This suit was brought by the appellee, for the use of the father and mother of Frederick L. Russell, whose death it is alleged was caused by the negligence of the appellant.

Russell entered the service of the appellant on the 18th day of May as conductor on one of its cars, and on the same day, while attending to his duties, was killed by being struck by one of the poles that supported the overhead wires. The route of the car to which the deceased had been assigned was from Owings Mills to Emory Grove. Russell had already made two trips before the accident happened. The structure of the appellant consists of a roadway with a single track alongside of which the poles are stationed. The car was an open summer car, with seats running entirely across, and a foot-board on each side used as a step for persons entering the car and as a means for the conductor to pass from one end to the other. The foot-board projects fifteen inches beyond the rail. The pole which struck the deceased was number 300, located two feet and one inch from the track. The distance of other poles from the track as measured was: No. 301, 2 feet 8 inches; No. 302, 2 feet 7½ inches; No. 303, 2 feet 9 inches; No. 299, 2 feet 4½ inches; and No. 298, 2 feet 8 inches. From the place of the accident the road is straight each way for three hundred and fifty feet, and there are no obstructions, natural or other, to prevent pole No. 300 from being placed further from the track and in line with the other poles. When the car reached

the Hannah More Academy the motorman nodded his head to the conductor that they had come to the place where he could begin to take up fares—there were several such points and the motorman had been instructed to tell Russell, who was a new man, where those points were. Russell was to take up the fares anywhere before reaching the next section. When Russell caught the motorman's nod, he stepped on the foot-board from the rear platform, on the side next to the poles, swung himself along the side of the car, holding to the handles, until he came opposite to a bench whereon were seated Mr. and Mrs. Logsden, two of the passengers, who had boarded the car near Hannah More Academy. Mrs. Logsden was seated about midway the bench and was nearer to the side where the deceased was than her husband. When he came opposite this bench he stopped, turned towards them, and slightly inclining his body into the car, reached forward his hand for the fares. It was then that he was struck by pole No. 300; his head was driven violently against the handle of the car, and he received a fatal injury. There was evidence tending to prove that if pole No. 300 had been the same distance from the track that the others were he would have escaped injury, and that the proximity of that pole rendered it unsafe to collect fares on that side of the car, and that the roadway on the other side at that point and for some distance was encumbered with fences, trees and a telephone pole, so as to make it unsafe to collect fares from that foot-board. There was evidence on the part of the defendant tending to prove this was not correct, that there were no serious obstructions, that it was dangerous all along the road to collect fares on the pole-side, that the witness, Tracy, saw the danger from pole No. 300 before it was reached and tried to warn the conductor, and there was nothing to prevent Russell from seeing it also. No instructions were given the conductor except such as he received from the motorman as to the places where the fares were to be collected. Russell was a steady man, but unused to the trolley in the country, having had experi-

ence only as a conductor on a cable car in the city. A little while before the accident the motorman had said to him, " you are a good, steady man and you had best be careful, if one of these poles catches you, it will fix you "; and Russell had replied, " he hoped not." Russell was a " stoutish built man, full stomach, weighing about one hundred and seventy pounds." At the time of the accident, the " car was going nearly as fast as possible."

Three exceptions were taken at the trial, but the two first were not insisted upon at the argument. The third and fourth exceptions bring into question the action of the Court upon the prayers offered by the respective parties, in granting the plaintiffs' 1st and 5th, and rejecting the 2d, 3d, 4th, 5th, 6th, 9th, 10th, 13th, 14th, and 15th of the defendant and also the defendant's offered at the conclusion of the plaintiffs' evidence.

There can be but little doubt about the general principles applicable to cases of this kind. When a servant agrees to occupy the place prepared for him by the master, he assumes all the usual risks of the service, and also of all those perils that are known to him, or ought to be known to him by the exercise of ordinary watchfulness. On the other hand, it is the duty of the master to exercise all reasonable care to provide and maintain safe, sound and suitable machinery, roadway, structures and intrumentalities; and he must not expose his employees to risks beyond those which are incident to the employment, and were in contemplation at the time of the contract of service; and the servant or employee has a right to presume that the master has discharged these duties. *Stricker's case,* 51 Md. 47; *Baker's case,* 84 Md. 21; 3 *Elliott on Railways,* secs. 1288 to 1291 and authorities cited. Russell therefore in accepting the employment of the appellant as conductor took upon himself all such risks as were usually incident to the service, and also such other risks as were known to him, or were discernible by ordinary care on his part. He was obliged to observe and guard himself against danger from the poles as properly or apparently located; but

one or more of them had been negligently and improperly placed, so that the usual risk of the service was increased; and if such misplacement was not apparent to him with the exercise of reasonable care, and was not in fact known to him, he was under no obligation to protect himself against such increased risk. In such case the increased danger would be hidden and secret, and no rule of law demands that one shall look out for what he has no reason to anticipate. *Geis' case,* 31 Md. 366; *Lewis' case,* 38 Md. 600.

Now there was evidence going to show that poles such as these are usually placed in line and that the poles along this road apparently were so placed, and the apparent distance was about two feet eight inches from the track. One of the poles, No. 300, was seven inches closer, and for the increased risk consequent therefrom the deceased was not bound to look out, unless he knew of the location of the pole, or ought reasonably to have known it, or unless it was obvious. It was contended that Russell, as matter of law, was guilty of contributory negligence in attempting to collect fares on the side next to the poles. His duty was to collect fares, and he was not directed on which side of the car he was to do it. He was a new man and knew of no rules on the subject and was not informed there were any. If therefore he chose to collect the fares on the pole-side, for any reason, his obligations as to taking care of himself were not thereby enhanced. He was bound in any case to look out for the poles as they ought to have been and apparently were located, but the use of the pole-side of the car did not impose upon him the duty of knowing what he did not and could not reasonably know. If he did not know of the misplaced pole and the increased risk growing out of its misplacement, there was no reason why he should not collect fares on the pole side, so long as he was careful to protect himself from all the apparent danger he incurred in so doing.

The evidence touching the several matters of fact that we have adverted to, is in some particulars con-

flicting.   There was evidence that pole 300 was within the danger line; that fares could be collected safely except as to the special pole; and that the road was so obstructed on the other side of the car as to make it unsafe to collect from that side.   On the other hand, the appellant offered evidence contradicting these matters and tending to show that the situation of the pole was obvious and that the deceased should have observed it.   In all such cases, the question of the negligence of the parties should be submitted to the jury for them to determine from all the facts offered in evidence whether either or both of the parties had been guilty of negligence in consequence of which the accident happened. *Maugans' case*, 61 Md. 60.

The first prayer of the plaintiff instructed the jury substantially that if they found that pole 300 was in an unsafe position and that the deceased was killed in consequence thereof, and that he was ignorant of its dangerous position and could not have known it by the use of ordinary care and caution on his part, and that at the time of the injury the deceased was using due and ordinary care and caution, they must bring in their verdict for the plaintiff.   This prayer properly presented the case to the jury, and the Court committed no error in granting it.

It would be profitless for us to examine in detail all the rejected prayers of the defendant.   What has been said already is applicable to them all, except to those that go to the question of damages.   As to them, we are of opinion the principles laid down in *Mahone's case*, 63 Md. 146, are applicable and are so fully stated there as not to require any additional remarks from us here.

The judgment must therefore be affirmed.

*Judgment affirmed.*

(Decided December 20th, 1898.)