STATE, For the Use of John Strepay et al., *v.* MORRIS COHEN et al.

[No. 28, January Term, 1934.]

*Decided April 26th, 1934.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*J. Marshall Neel* and *Lester H. Crowther,* with whom was *Webster C. Tall* on the brief, for the appellants.

*Edward L. Ward,* with whom was *Edwin W. Wells* and *Herbert Levy* on the brief, for the appellees.

Parke, J., delivered the opinion of the Court.

The action in this case was brought by the State under article 67 of the Code (section 1 *et seq.*) to recover for a father the damages suffered from death of his minor son by negligence of the defendant. The appeal is from the rulings which excluded evidence of the funeral expenses of the son, and limited the recovery of compensation for a loss of services and support by the son to the period of the minority of the son. The death of the son was twenty days before he would have reached the age of twenty-one years. The father was forty-six years old and had recently had an arm amputated. The dead son was unmarried and lived at home with his parents. Two brothers, a sister, and a stepbrother of the dead son, whose ages range from ten to sixteen years, are the other members of the family living at home.

1. The father paid the son's funeral expenses, but his offer to prove the amount and reasonableness of the expenses as damages for which he was entitled to compensation under the statute was rejected. The ruling was correct. No allowance can be made for funeral or mourning expenses. 1 *Poe, Pl. & Pr.,* sec. 464. "The course of authority is far too strong to justify us in saying that an action to recover funeral expenses will lie under that act. * * * By those decisions it has been held that that is not the kind of damage which is in contemplation of Lord Campbell's Act, but what is contemplated is the pecuniary loss which has been sustained by one member or the whole of a limited class by reason of the wrongful act in respect of which the deceased could have brought an action had he lived." Lord Alverstone, in *Clark v. London Gen. Omnibus Co.* (1906), 2 K. B. 648, 658, 2 British Ruling Cas. 694, with note; *Barnett v. Cohen,* L. R. 2 K. B. 461, 473; cases collected and reviewed in 54 *A. L. R.* 1077.

2. The plaintiff assigns as error the various rulings which excluded from the case all claim for prospective loss of services and assistance by the father after the son would have arrived at full age, had he lived. The adverse action by the

court was on offers to prove that at the time of the son's death the father was not able to work, and had no income in addition to that received from the son; that the son had expressed an intention to make future contributions to the support of the father; that the father had just come from the hospital at the time of his death; and that the life expectancy of the father was twenty-three years. And, finally, at the close of the case, the jury were instructed by the defendant's request that recovery could not be had for loss of the son's services and support beyond his majority. These rulings have been grouped, as they present a common problem.

The first case on appeal in which this court considered the right of a surviving parent to recover damages for the expectancy of benefits to be received after the majority of an infant child whose death was caused by the wrongful act of the defendant was *State, use of Coughlan, v. Balto. & O. R. Co.* (1866), 24 Md. 84. In that appeal, the action was brought for the use of the mother to receive damages for the negligent killing of her son at the age of ten and one-half years. The plaintiff asserted the right to prospective damages by a prayer which the *nisi prius* court rejected and gave its own instruction, which confined the jury to the pecuniary damages sustained by the plaintiff, and to "such a sum as the jury may believe, from all the evidence in the case, will be an adequate compensation for the loss of her son's services from the time of his death to the period when, if he had lived, he would have attained the age of twenty-one years." Page 95 of 24 Md.

In response to the objection that this instruction limited the mother to compensation for the loss of her son's services during his minority only, this court said:

"To submit to a jury the value of a life without limit as to years, would have been to leave them to speculate upon its duration, without any basis of calculation. The law entitles the mother to the services of her child during his minority only (the father being dead); beyond this, the chances of survivorship, his ability or willingness to support her, are

matters of conjecture too vague to enter into an estimate of damages merely compensatory.

"According to the appellant's theory, the mother and son are supposed to live on together to an indefinite age; the one craving sympathy and support, the other rendering reverence, obedience and protection. Such pictures of filial piety are inestimable moral examples, beautiful to contemplate, but the law has no standard by which to measure their loss." Pages 107, 108 of 24 Md.

In the case cited, the infant was, at his death, too young to be of assistance or to manifest his willingness to assist his parent. However, in *Agricultural & Mechanical Association v. State, use of Carty* (1889), 71 Md. 86, 18 A. 37, 39, the son was nineteen years and seven months old when he was wrongfully killed through the negligence of the defendant, and he had been emancipated two years before his death by his father, but had voluntarily given each year since his emancipation a part of his wages to his father, and had declared "that after he got of age he would help fix up the property" of the father. It will be observed that the minor was emancipated, but lived at home when not at work, and was presently and voluntarily contributing regularly of his earnings to his father, and had promised that, after he reached his full age, he would aid his father in improving the father's property. Furthermore, the trial court declined to limit the father's right to compensation to the loss of his son's service until he should arrive at the age of twenty-one. So the question was directly presented whether, in an action under the Maryland statute, which is similar to the English enactment known as Lord Campbell's Act, the jury should be allowed to consider as an element of damages any expectation of pecuniary benefit to the father from the interrupted continuance of the child's life beyond majority.

This court was aware of the conflict of authority on this question in other states, and its decision in *State, use of Coughlan, v. Balto. & O. R. Co., supra,* was reached after a consideration of the conflicting decisions on the subject-mat-

ter.  The doctrine thus deliberately adopted was consistently applied in *Cumberland & Pennsylvania R. Co. v. State, use of Moran* (1876), 44 Md. 283, 286, 295, where the minor killed was a fireman on a locomotive engine, and in *Balto. & Pot. R. Co. v. State, use of Stansbury* (1880), 54 Md. 648, 652 (sixth prayer), where a lad of about twelve years of age was killed while tending his father's cows, which were grazing in the meadow adjoining the railway tracks.  So, while stating there was a conflict of authority on the subject in other jurisdictions, the court, in *Agricultural & Mechanical Assn. v. State, use of Carty, supra,* declared the question settled so far as this state is concerned by *State, use of Coughlan, v. Balto. & O. R. Co., supra.*  After quoting the passage found in this opinion, the court enforced the reasoning by saying through Judge Miller: "The legal right of the mother to the services of her minor son is referred to as furnishing a safe basis from which the jury may reasonably infer that she suffered a pecuniary loss by his death, and as affording her a reasonable expectation of pecuniary benefit from the continuance of his life during minority.  But what a minor child may be able or willing to do for his father or mother after he becomes of age, when he has the right to leave the parental roof and set up for himself in life, and before his willingness and ability have been tested by experience, is, as we understand the court to say, a matter of conjecture, too vague to enter into an estimate of damages in such a case."  Pages 102, 104, of 71 Md., 18 A. 37, 38.

The two cases mentioned are recognized by writers on the subject as defining and stating the position of this tribunal with reference to the rule to govern in this state.  *Tiffany, Death by Wrongful* Act, sec. 165; *Black on Law and Practice in Accident Cases,* sec. 267, note 82; *Bond v. United Railroads of San Francisco,* 150 Cal. 270, 113 P. 366; *Western Union Telegraph Co. v. State, use of Nelson* (1896), 82 Md. 293, 295, 313, 33 A. 763, plaintiff's second prayer (child of eleven years); 1 *Poe, Pl. & Pr.,* sec. 464.

Throughout the state these two decisions have been re-

garded as having weighed the authorities and reasons in support of the conflicting views, and as having definitely adopted the doctrine that, in an action under the statute to recover damages for the death of a minor child, the jury should not be allowed to take into account any expectancy of pecuniary benefit to the parent beyond the life of the child during minority. In this connection, the course of the courts was according to the salutary rule that, when a cause is adjudged, the cause is ended. The theory is that it is generally more consonant with justice to enforce established doctrines consistently and uniformly than to change them upon grounds which, although weighty and persuasive in other jurisdictions, have long since been considered and rejected. So, whatever may be the preponderance of authority on this subject-matter in other jurisdictions, there would be no justification for the abandonment of the doctrine, unless the reason for the doctrine has ceased. The reasons for the doctrine remain as valid as at first, and there is no statutory change to affect these reasons for the doctrine, unless it be the provisions of sections 78-A, 78C of chapter 637 of the Acts of 1916 with reference to destitute parents. Code, art. 27, secs. 91-93.

During infancy the parent is entitled to the services and earnings of the minor, who has no capacity to contract nor right to leave the custody and control of the parent, but is subject to parental authority until the day of his majority. His status being thus fixed by law during his minority, what the child may be able or willing to do, when infancy ends, and the right arises to leave the custody and control of the parent and act independently with respect to contract, property, domicile, marriage, and the affairs of life, cannot be predicted from practical experience with any reasonable degree of certainty, and therefore what the minor will do on his majority towards the financial assistance or service of his parent is necessarily speculative, and so can afford no reasonable basis for the estimate of pecuniary compensation. The reason, therefore, assigned by the Maryland decisions for

the refusal to permit a recovery for what a minor will do, after his majority, to assist his parent, is that the prospective assistance or service is essentially speculative. Unless chapter 637 of the Acts of 1916 makes reasonably certain the services or pecuniary assistance that the infant, upon his majority, will render the parent, the actuality of this prospective service or pecuniary assistance will continue to be speculative, and the *Coughlan* and the *Carly* cases, *supra*, will apply.

The statute is a penal one, and punishes an offense against the sovereign. It does not become operative unless both the adult child and parent reside in the state, and the parent is destitute of means of subsistance, and unable by reason of old age, infirmity, or illness to support himself or herself, and the adult child is possessed of or able to earn means sufficient to provide the parent with necessary shelter, food, care, and clothing, and neglects or refuses so to do. A neglect or refusal, under these circumstances, is a misdemeanor, which, upon conviction, is punishable by a fine not exceeding $500 or a certain term of imprisonment, or both, in the discretion of the court. The court may direct that the fine be paid in whole or part to the parent, or, under prescribed circumstances, may pass an order, subject to change according to circumstances, directing the child to pay a certain sum weekly for the space of two years to the parent. Should such parent become a public charge within the state, then any county or municipality may recover from time to time the sum expended for the maintenance and support of such parent by action against the adult children or any adult child who may be possessed of or able to earn sufficient means to provide such parent with necessary food, care, and clothing, provided recovery may not be had for maintenance and support furnished more than two years before the institution of any suit. Code, art. 27, secs. 91-93.

These provisions punish the child, but do not assure the payment of any sum to the destitute parent.

The four sections of the statute are in addition to that

article of the Code embodying the statutory criminal law of the State, and their primary purpose is to relieve the State of the burden of the maintenance of a class of destitute persons by making it a crime for their children, with adequate resources, to fail or refuse to support the parent, and to make them responsible, within the designated limitation of time, for the amount expended by any county or municipality of this State by reason of the parent having been maintained as a public charge. Code, art. 27, secs. 91-93. The statute, however, creates no civil obligation enforceable by the parent against the child, and is exclusively penal legislation punishing an offense against the sovereign state by the penalty denounced in the form of fine, imprisonment, and liability. *Mayne on Damages* (10th Ed.), 1, 2. Accepting for the present discussion that the act is constitutional as a criminal statute, there is no indication of any legislative intent to affect the measure of recovery in any civil action. See *Cooley's Constitutional Limitations* (8th Ed.), vol. 2, p. 842, note, following citation of *People v. Hill,* 163 Ill. 186, 46 N. E. 796, 36 L. R. A. 634.

The statute in question is effective only where the condition is fulfilled that the destitute parent and the child with the capacity to support are both residents of the State of Maryland; so no construction would be tenable that would extend its provisions to embrace the situation where either the adult child or father or both were nonresidents. Since the enactment in terms does not apply to nonresidents, it has no effect on their paternal or filial relation, and, if by arbitrary construction this criminal statute should be held to determine the civil rights and obligations of resident parent and child, so as to affect the measure of damages in a civil action for damages resulting to the parent by the wrongful death of the child, the anomalous result would be that, in an action in a court of this state by a nonresident parent for the death of a minor child, which had been caused by the wrongful act of a resident defendant, there would be no recovery for prospective damages beyond the majority of the

infant, because the statute has no application to the plaintiff in interest, but that, in a similar action by a resident, the parent would recover such prospective damages by force of the statute under consideration. In other words, in the courts of this state a resident parent would, by virtue of a penal statute, enforce a measure of damages that would embrace not only the damages sustained during nonage of the minor, but the period of his expectant majority during the life of the parent, but a nonresident parent would recover damages suffered during the residue of the period of the child's minority. The right to sue and defend in the courts of this state by a nonresident upon terms of equality with the residents of this state in respect to the measure of damages enforced in similar causes of action and like circumstances is a constitutional guaranty, and its deprivation is a denial of the equal protection of the laws. *Cooley on Constitutional Limitations*, vol. 2, pp. 736, 738-741, 821, 822, 824, 825; *Chambers v. Balto. & O. R. Co.*, 207 U. S. 142, 148, 28 S. Ct. 34, 52 L. Ed. 145; *Missouri Pac. R. Co. v. Clarendon Boat Oar Co.*, 257 U. S. 533, 535, 42 S. Ct. 210, 66 L. Ed. 354; *Sully v. American Nat. Bank*, 178 U. S. 289, 20 S. Ct. 935, 44 L. Ed. 1072; *Truax v. Corrigan*, 257 U. S. 312, 333, 42 S. Ct. 124, 66 L. Ed. 254; *Stale v. Mercer*, 132 Md. 263, 103 A. 570; *Havre de Grace v. Johnson*, 143 Md. 601, 607-611, 123 A. 65; *Luman v. Hitchens Bros. Co.*, 90 Md. 14, 44 A. 1051.

The constitutional difficulties in the extension by construction of the penal statute to the region of civil rights and liabilities are convincing that there was no legislative intent to make the extension.

Reverting to the terms of the statute, and assuming for the purpose of the discussion that the penal legislation was intended to affect the civil rights and domestic relations of the parent and child, the question remains, What degree of reasonable probability did the provisions of the enactment create to make the parent's expectancy of pecuniary benefits after majority of the infant less remote, so that this expectancy was no longer too speculative to afford a basis for compensa-

tory damages, as was decided in *State, use of Coughlan, v. Balto. & O. R. Co,* and *Agricultural etc. Co. v. State, use of Carty, supra?*

The statute is penal and prospective. It creates no civil liability of the infant to the parent. Its operation is defeated if either the parent or the adult child be or become a nonresident, or if the adult child is so indigent as not to be able to provide the parent with necessary shelter, food, care, and clothing. Again, the statute is dormant unless, and only when and while, the parent be destitute of means of subsistence and unable, by reason of old age, infirmity, or illness, to be self-supporting. Furthermore, whether the punishment would be either a fine or imprisonment, or both, is in the discretion of the court; and, if a fine, it shall not exceed $500, and whether or not the parent shall receive any of the fine imposed or the forfeited recognizance, if any, of the child, depends upon the judgment of the court. It is also discretionary with the court whether, in substitution for a fine or imprisonment, the child be directed to pay, subject to change from time to time, a certain sum of money weekly for the space of two years.

The statute, therefore, affords the jury no more basis for a reasonable inference that the adult child would ever have come within the denunciation of the penal statute and 'paid a sum adjudged to the parent than, without the statute, the jury would have to find that the infant, after arriving at maturity and so, with the capacity in law to act, would have assisted pecuniarily his parent and in what amount. The fundamental difference between the prospective pecuniary assistance of the parent by the minor child, after majority, under the penal statute, and without reference to the statute, is that under the former it is compulsory and under the latter it is voluntary. Obviously it would argue a greater gift of prophecy in the jury to find affirmatively that, if the infant had not been killed but had attained majority, the conditions would have been fulfilled to bring the adult child within the purview of the statute when the resident parent was destitute of means of subsistence and unable to be self-supporting by

reason of old age, infirmity, or illness, and that the child would then have been sentenced to pay the parent as an offender under the statute a certain amount but not in excess of $500 on conviction, and had paid the amount adjudged, than for the jury to estimate what the adult would voluntarily have contributed as a dutiful and able child. The jury, in either inference, would have no standard to apply and no subsisting facts to consider.

The penal statute applies only to adult children, and therefore a minor is not subject to the mandate of the law and his conduct is not governed by its command. Again, during minority, the child has no legal right to his own services, funds, or earnings. If the minor child should be an aid to the parent entitled by his personal services or by contributions from his earnings, the child is rendering the parent what the parent is entitled by law to demand and receive, and the pecuniary assistance so rendered during minority is consequently not sufficient evidence to support an expectation of future pecuniary benefit. What the child will do upon attaining his majority, when as an adult the child assumes the burdens of life and becomes responsible for his own support, and probably of a wife and children, and capable for the first time of deciding what his course will be towards his parents, when and if they should need pecuniary aid, and he have the ability to help, cannot be with any degree of certainty determined by the fact of relationship, by general experience, and by the existence of the statute. *Supra*. The prospect that the father might become a pauper within the meaning of the penal statute, and that the child would be called upon to support him, are equally too remote. *Harrison v. London etc. Ry. Co.* (1885), Cab & El. 540.

It is well established that the recovery for loss of services or support does not depend upon a legal right in the plaintiff to valuable assistance from the dead relative, but that it is sufficient if the evidence shows that the surviving relative had a reasonable expectation of pecuniary benefits from the continuance of the life of the dead relative, that was disappointed by his death through the wrongful act of the defend-

694

ant. *Balto. & O. R. Co. v. State, use of Hauer*, 60 Md. 449, 467, 468; *State, use of Elder, v. Balto. & O. R. Co.,* 126 Md. 497, 502, 95 A. 65.

What is proof of a reasonable expectation of pecuniary assistance is differently answered in the decisions of other appellate tribunals, whose variety in conclusion is attributable to the terms of the statutes, the facts of the particular case, and the effect given to the testimony. The conflict found among the decisions on this subject would be introduced into this jurisdiction if there should be a departure from the former decisions of this court involving the questions now at bar. As has been stated, the effect of the penal statute is not such as to create a civil relation between parent and a minor child, which would raise a reasonable expectation that the services of a minor child, who was killed during minority, would have been of pecuniary value to the parent if the child had survived to his majority. The chances of survivorship, of ability and willingness to support the parent after maturity, subsist, and there is no limit to the speculation of the jury in reference to the future, and the probabilities and possibilities of unknown and unknowable contingencies. Any estimate either of the amount that would have been compulsorily paid under the penal statute, or of the amount that would have been voluntarily paid by reason of the child's capacity and willingness to support the parent, would be too remote, because they lie wholly in conjecture, and are so speculative as to furnish no reasonable foundation for a verdict, under the decisions of this court. *Supra.*

While chapter 637 of the Acts of 1916 was enacted after the decisions which have been cited, the doctrine stated has, so far as an investigation has disclosed, been consistently applied as the settled law of Maryland. *Hagerstown & Frederick Ry. Co. v. State, use of Weaver* (1921), 139 Md. 507, 515, 115 A. 783, plaintiff's third prayer and defendant's eleventh prayer (infant of five years); *American Express Co. v. State, use of Denowitch* (1918), 132 Md. 72, 78, 103 A. 96 (infant of seven years), plaintiff's third prayer; *United Rwys. Co. v. Mantik* (1915), 127 Md. 197, 204, 96 A. 261

(infant of nine years), plaintiff's second prayer; *Balto. & O. R. Co. v. State, use of Griffin* (1922), 141 Md. 520, 119 A. 244 (infant of four years), defendant's third prayer; *State, use of Carter, v. Phillinger* (1923), 142 Md. 365, 379, 120 A. 878 (infant of nineteen years), plaintiff's first prayer and defendant's sixth and tenth prayers; *State, use of Kolish, v. Wash., B. & A. Elec. R. Co.* (1926), 149 Md. 443, 131 A. 822 (infant of four years), plaintiff's first prayer.

In conclusion, the case of *Weems v. Mathreson* (1861), 4 Macq. 215, should be considered. This was an appeal in the House of Lords that was decided according to Scotch law. At common law a child is not bound to support its parents, but the civil law of Scotland is different. It was found that by the law of Scotland there is a reciprocal civil obligation on the part of the parent and child to support each other, when there is destitution on the one side and ability on the other. The mother in the case was maintained by her son, who was of the age of twenty-one and able to maintain her; and, if he had not maintained her, he might have been compelled to do so by process of the law of Scotland. *Erskine's Institute,* Book 1, tit. 6, s. 57; *Fraser's Personal and Domestic Relations,* Vol. 2, p. 46. The son's death was by the tort of his employer, and the mother brought an action for the recovery of damages sustained by her, and it was held that the action would lie; Lord Wensleydale saying: "I take it to be clear that there is a remedy on this case by the mother for the death of her son, who was bound to support her if he could, and who it is clear had the means of doing so." It will be observed that this case is distinguished on its facts from the pending appeal, as the appeal in the House of Lords was not for the recovery of compensation for the death of a minor beyond the period when he would have attained his full age.

The remaining questions presented by the record do not require discussion. It will be sufficient to state that no reversible error has been found, and the judgment in favor of the plaintiff will be affirmed.

*Judgment affirmed, with costs to the appellee.*

Bond, C. J., filed a dissenting opinion as follows, in which Urner and Adkins, JJ., concurred:

Assuming that the father in this case would have been able, by the proof he offered, to show that he will be within the statutory class of destitute parents, then, with respect to recovery for loss of statutory support which might have been required of the son, the principles settled by the decisions in cases under the statute on death by negligence, Code, art. 67 (section 1 *et seq.*), would seem to me to require a different conclusion.

In the first place, the plaintiff is not applying for enforcement of the statute on destitute parents. The death of the son removed him from all possible operation of the statute. Nor is the father suing exactly for having been deprived of a right under that statute. He would have had no such right under it, any more than he would have had a right under the son's contract of employment, which in twenty days or more might have given promise of aid to the father. He is suing for loss of the life of the son which would be valuable to him, and the destitute parent statute, like the son's contract of employment, would enter into the case only as an evidentiary fact, to show reason to believe that the son's continued life would have been of material advantage to the father, and that the cutting off of the life has deprived him of that advantage. There would seem to me to be no ground for objecting that the statute would be applied unconstitutionally or contrary to the intention of the Legislature, for it is not to be applied at all in that sense. The plaintiff is concerned merely with the value to him in the life, which the statute creates as an inevitable incident. And as to the constitutionality of the statute itself, it is a common and ancient method of poor relief, in force in England since the reign of Elizabeth (Stat. 43 Eliz. c. 2), and extended to many jurisdictions in America, and never before questioned; and I am not able to agree that there is ground for questioning it now.

There is no dispute now on the principle that recovery

under article 67 is based on loss of benefit reasonably to have been expected from continuation of the life of the deceased, not necessarily because of a legal obligation on the deceased, although a legal obligation to give it might have existed and given rise to the required expectation of benefit. "The loss which a man suffers by the death of a relative may be the loss of something he was entitled to receive, or may be the loss of something it was merely probable he would receive." *Tiffany, Death by Wrongful Act,* sec. 159. Accordingly, recovery by parents is commonly allowed for loss by death of adult children who have been contributing to the support of the parents, or by adult children for loss from death of parents who have been contributing to the support of those children, although there is no legal obligation in either case; and on the other hand, a wife separated from her husband for twelve years and with nothing received from him during that time, has been held entitled to recover for loss by his death because of her legal right to support from him. In all these instances alike, the requisite expectation of benefit from continuation of the life lost was considered to exist. *Balto. & O. R. Co. v. State, use of Hauer,* 60 Md. 449, 468; *Balto. & O. R. Co. v. State, use of Mahone,* 63 Md. 135, 145; *Pikesville etc. Co. v. State, use of Russell,* 88 Md. 563, 573, 42 A. 214; *State, use of Elder, v. Balto. & O. R. Co.,* 126 Md. 497, 95 A. 65; *Balto. & O. R. Co. v. State, use of Chambers,* 81 Md. 371, 389, 32 A. 201. And see *Franklin v. S. E. Ry. Co.,* 3 H. & N. 211, 214; *Stimson v. Wood* (1888), 57 L. J. Q. B. 484; *Harrison v. Ry. Co., Cab. & El.* 540.

It has been established in this state that expectation of benefit from continuation of the life of a minor son into his adult years cannot find an adequate basis in the son's action or attitude before his majority, because his action in the subsequent years, being voluntary, will be governed by freedom and responsibilities of his own which will be new, and the effect of which on him cannot be foreseen. *Agricultural & Mech. Assn. v. State, use of Carty,* 71 Md. 86, 102, 104,

18 A. 37; *State, use of Coughlan, v. Balto. & O. R. Co.,* 24 Md. 84, 106; *Cumberland & Pennsylvania R. Co. v. State, use of Moran,* 44 Md. 283; *Baltimore & Pennsylvania R. Co. v. State, use of Stansbury,* 54 Md. 648; *Albert v. State, use of Ryan,* 66 Md. 325, 7 A. 697. Solely because there is no sufficient basis for predicting his disposition or volition in the future years, recovery is restricted to benefits expected up to the time of the son's majority. Until it is manifested under the circumstances that will determine it, the disposition cannot be found and taken as a basis for inferring further benefits. But his mere disposition will not determine his action when the law imposes an obligation on him. Volition as the basis of expectation is then replaced by obligation and compulsion, and his minority at the time of death, which figures in a problem of inferring future voluntary action, is irrelevant in the problem of expectations under the statutory obligation. If the same son had reached the age of twenty-one years, and had given his father support equal to that which the law would require of him, there would be a sufficient ground for recovery of expected benefits, as was decided in the cases cited above, on the basis of voluntary disposition manifested; and to the question whether obligation as well as voluntary disposition to give the same support furnishes the sufficient basis of expectation there seems to me only one possible answer. Obligation furnishes the stronger basis.

All the cases which have touched on this question, so far as I have been able to discover, take the view, therefore, that, if the parent is destitute, the obligation imposed on the son to contribute support after the son's maturity gives rise to the necessary expectation of benefit or advantage. That was the conclusion in *City of Chicago v. Keefe,* 114 Ill. 222, 230, 2 N. E. 267, 270, in which a like obligation was imposed, by statute, to be enforced by order of court and attachment for contempt when necessary. Smith-Hurd Rev. St. Ill. 1933, ch. 107, secs. 1-11; Ill. Ann. Stat., ch. 107, secs. 1 to 11. "Parents," said the court, "and even brothers and sisters,

might reasonably expect, in many ways, to derive pecuniary benefit from the continued life of the intestate, as of grace and favor, if not of right, at any age of life. And our statute imposes the duty of support, in the event of their becoming paupers, of the parent by the child, and of one brother or sister by another brother or sister." Under a Colorado statute, closely similar to the Maryland statute, and enforced by penalty (Courtwright's Mills, Ann. Stat., sec. 5378), the same conclusion was reached. *Denver, S. P. & P. R. Co. v. Wilson,* 12 Colo. 20, 26, 20 P. 340. In Michigan, a like penal statute exists (Comp. Laws Mich. 1929, sec. 8224), and in *Richardson v. Detroit & M. Co.,* 176 Mich. 413, 142 N. W. 832, 838, in which the question arose, it appears to have been conceded that the obligation would give rise to the requisite expectation of benefit, but it was contended for the defendant that this would not come about until the statute had been enforced by judicial proceeding. The court replied: "We cannot agree with appellant's counsel that there can be no recovery in this case in so far as the father and mother are concerned, because action had not been taken under chapter * * * relating to the support of poor persons by their relatives." In a case on appeal to the House of Lords from Scotland, *Weems v. Mathieson,* 4 Macq. 215 (1861), a like obligation imposed on an adult son, not by statute, apparently, but by the unwritten law of Scotland, was accepted as sufficient ground for recovery. If there had been no such obligation, said the Lord Chancellor, support actually given in that case would have afforded the ground for expectation of benefits. "But," he continued, "it is now proved by the clearest authority, cited by the Lord Advocate, * * * that by the law of Scotland there is a reciprocal obligation on the part of parent and child to support each other, when there is destitution on the one side and ability on the other. Therefore what Sir Fitzroy Kelly relied upon fails him altogether, for here there is proof of legal obligation, and under this legal obligation this son of the age of twenty-one, who was able to maintain his mother, and was maintaining

her, might have been compelled to do so by process of law." An analogous case on the point seems to be that of *Gaydos v. Domabyl,* 301 Pa. 523, 152 A. 549, 554, under a statute which imposed on parents in some circumstances the cost of maintaining an insane adult child in a public asylum. In a suit on behalf of an adult insane child so confined, as well as on behalf of other children, for death of their mother, it was held that, even when the mother had been contributing nothing to the support of that child, "if she was obliged to support him, the duty thus enjoined would raise a presumption of expectancy."

Objection is made that the many contingencies that must have affected the amount of support, if any, which might have been exacted from this son in the future, render it too uncertain and difficult or impossible to estimate to be made the subject of an award under Lord Campbell's Act. It is an objection that might have been made in the cases just cited, and, indeed, one to which all damages for anticipated future losses must be subject in various degrees. In tort cases it is commonly impossible to find any precise basis for calculating the damages sought. In a suit for breach of promise to marry, Judge Miller, in the opinion written for the court, said: "From the nature of the case, it has been found impossible to fix the amount of compensation by any precise rule, and as in tort, the measure of damages is a question for the sound discretion of the jury in each particular instance, subject of course to the general restriction, that a verdict influenced by prejudice, passion or corruption will not be allowed to stand." *Sauer v. Schulenberg,* 33 Md. 288, 291. The difficulty is especially frequent in suits under Lord Campbell's Act, in which damages must be awarded for anticipated losses, often incalculable. There is hardly any more uncertainty in the amount of support which might be exacted from one of several children of a destitute parent in the future than there is in the amount which such a child after full age might voluntarily contribute through future years, hardly any more than in that which a father might receive from the continued life of a child not yet earning anything at the time of its death,

or in the value of the support and nature which a child might expect through future years of its minority, or the aid which a married daughter might expect to receive from a mother in the form of housework and looking after children. *Agricultural & Mech. Assn. v. State, use of Carty,* 71 Md. 86, 102, 18 A. 37; *Balto. & O. R. Co. v. State, use of Mahone,* 63 Md. 135.

It is the essential nature and design of Lord Campell's Act to provide a commutation of uncertainties. This seems to be contemplated in its enactment merely that damages shall be such as the jury "may think proportioned to the injury resulting from such death to the parties respectively for whom and for whose benefit such action shall be brought." Code, art. 67, sec. 2. And it seems to be agreed by all or nearly all courts that uncertainty in the amount of the damages, or difficulty in finding a basis of calculating them, can never interfere with an allowance under the act, if some benefit and advantage could reasonably have been expected from continuation of the life of the deceased, as here. This court, in a case in which there was no evidence of wages paid to the deceased, and it was sought to restrict the allowance to nominal damages, quoted for the true rule Pollock, C. B., in *Duckworth v. Johnson,* 4 H. & N. 652: "It is true no distinct evidence was given of the value of the boy's services, and the cost of boarding and clothing him; but as to that, the jury were better able to judge than we are. It having been decided that a reasonable prospect of pecuniary benefit may be taken into consideration, it is impossible for us to say, that the jury were not warranted in finding the verdict which they have done." *Balto. & O. R. Co. v. State, use of Kelly,* 24 Md. 271, 282.

My conclusion, differing from that of the majority, is that the judgment should be reversed, and a new trial awarded, to afford the equitable plaintiff an opportunity to recover compensation for the item of loss of statutory support, if he can prove that he will come within the statute on destitute parents.