IOWA MUTUAL TORNADO INSURANCE ASSN. Appellant, v. G. S. GILBERTSON, State Treasurer, B. F. CARROLL, State Auditor, and G. S. GILBERTSON and B. F. CARROLL, Appellees, and seventeen other cases against the same defendants and appellees.

**Mutual insurance companies: ORGANIZATION: TAXATION.** A mutual insurance corporation organized under the general incorporation laws, with authority to do business throughout the state, is not a benevolent association, but a corporation for pecuniary profit, and is subject to the tax on its gross receipts as provided in Section 1333d, Code Suppliment, 1902.

**Taxation of Mutual Insurance Companies: CONSTITUTIONALITY OF STATUTE.** The tax imposed on mutual insurance corporations is not a property tax, but a license tax which is a part of its expenses that may be met by assessments, and is not in violation of Section 2, Article 8, of the Constitution relating to the taxation of the property of corporations for pecuniary profit.

**Same.** The statute imposing a license tax on mutual insurance companies is not unconstitutional, as denying equal protection of the law, because exempting from the tax county mutuals not organized for pecuniary profit.

**Classification of insurance companies:** TAXATION. The legislature may make a valid classification of insurance companies so long as the same is not purely arbitrary; and it may provide a license tax for one class that is not applicable to another and the same will not be subject to the objection that it is class legislation, provided it affects all companies of that class alike.

**Same.** The distinctions between county and state mutual insurance companies will support that classification for the purpose of taxation, but a county mutual organization for pecuniary profit and doing a business similar to state mutuals is subject to the same tax.

**Same:** Neither the fourteenth amendment to the federal constitution nor the civil rights act have any application to the power of the state to tax different trades, businesses or professions.

**Exemption from taxation.** The property of a mutual insurance company organized for pecuniary profit is not exempted from taxation by Code Section 1304, relating to benevolent associations.

*Appeal from Polk District Court.*— HON. JAMES A. HOWE, Judge.

WEDNESDAY, FEBRUARY 14, 1906.

ACTIONS at law to recover taxes paid under protest, by the various insurance companies, appellants, to the defendants, who are respectively the Treasurer and Auditor of State. It is claimed that the statute, under which the taxes were exacted, is unconstitutional and void. Defendants' demurrers to the petitions were sustained, and judgments were rendered against the several insurance companies for costs. They each prosecuted appeals to this court, and here the cases were consolidated and will be considered together. — *Affirmed.*

*Edmund H. McVey,* for appellants.

*Charles W. Mullan,* Atty. Gen., for appellees.

DEEMER, J.— The statute, under which the taxes sought to be recovered were exacted, reads as follows:

State Tax — Date Payable. Every insurance corporation or association of whatever kind or character organized under the laws of the State of Iowa, not including county mutuals or fraternal beneficiary associations, which county mutuals and fraternal beneficial associations are not organized for pecuniary profit, shall on or before the 1st day of March of each year, pay to the Treasurer of State a sum equivalent to one per centum of the gross receipts from premiums, assessments, fees, and promissory obligations required by insurance contracts which are received during the next preceding year preceding the 1st day of January last past, after deducting the amounts actually paid for losses, matured endowments, dividends to policy holders, and the increase in the amount of the reserve as certified by the department actuary in his official statement to the Auditor of State on the 31st of December previous, based on the actuary table of mortality and four per cent. and the amounts returned to members upon cancelled policies, certificates, and rejected applications during said year; and not until such payment shall the Auditor of State issue the annual certificate as provided by law.— 28th General Assembly, page 26, chapter 43, section 5; section 1333d, Code Supp. 1902.

It is alleged that each of plaintiffs is a corporation organized under chapter 5 of title 9 of the Code, relating to corporations not for pecuniary profit, and that they paid the taxes required by said statute under protest, by

1. MUTUAL INSURANCE COMPANIES: organization: taxation.

reason of defendants' threats, and under compulsion, in order to protect themselves from irreparable injury. The law, under which these taxes were exacted, is said to be unconstitutional and void, in that it discrimnates unfairly and illegally against complainants, is unequal in its application, and offends against article 1, section 6, article 3, section 30, and article 8, section 2, of the Constitution of Iowa, the fourteenth amendment to the federal Constitution, and the civil rights act, known as section 1977 of the Revised Statutes of the United States [U. S. Compiled Statutes 1901, page 1259]. It is also contended that these complainants are exempt from

all taxation under section 1304 of the Code of Iowa; and that the law under which they were organized does not contemplate the creation of a fund whereby to meet such taxation.

These propositions are nearly all based upon the fundamental concept that plaintiffs are corporations organized under our statutes as "not for pecuniary profit," and this is alleged to be the fact in the petitions filed in the several cases. The demurrers filed admit all facts well pleaded, but do not, of course, admit conclusions of law, nor do they admit facts which are contrary to law, nor such as are legally impossible. *Wheeler v. R. R. Co.,* 31 Cal. 46 (89 Am. Dec. 147; *Griffin v. R. R. Co.,* 72 Ga. 423; *Scofield v. Mc-Dowell,* 47 Iowa, 129. To a proper solution of the questions involved it will be necessary first to go to the law authorizing the creation of such insurance companies as are here involved, in order that we may determine their character and understand their legal status. By section 1759 it is provided that:

Any number of persons may, without regard to the provisions of the preceding chapter, enter into contracts to and with each other for their insurance from loss or damage from fire, tornadoes, lightning, hailstorms, cyclones or windstorms, but such associations of persons shall in no case insure any property not owned by one of their own number, except school or church property within the territory in which they do business as may be approved; and the reinsurance of risks of similar associations.

And by section 1760 we have this differentiation of such associations:

Any association incorporated under the laws of this State for the purpose of furnishing insurance as provided for in this chapter, doing business only within the county in which is situated the town or city named in its articles of incorporation as its principal place of business, or the coun-

ties contiguous thereto, shall, for the purposes of this chapter, be deemed a county mutual assessment association; all other associations operating hereunder shall, for the purposes of this chapter, be deemed state mutual assessment associations.

Chapter 1 of title 9 of the Code, under the general head " Of Corporations for Pecuniary Profit," provides for the organization of corporations to do any kind of lawful business; and chapter 2 of the same title, under the designation " Of Corporations Not for Pecuniary Profit," section 1642, reads as follows:

Any three or more persons of full age, a majority of whom shall be residents of this State, may incorporate themselves for the establishment of churches, colleges, seminaries, lyceums, libraries, fraternal lodges or societies, temperance societies, trades unions or other labor organizations, agricultural societies, farmers' granges, or organizations of a benevolent, charitable, scientific, political, athletic, military or religious character by signing, acknowledging, and filing for record with the county recorder of the county where the principal place of business is to be located, articles of incorporation stating the name by which the corporation or association shall be known, which shall not be the same as that of any such organization previously existing, its business or objects, the number of trustees, directors, managers or other officers to conduct the same, and the names thereof for the first year.

In chapter 4 of title 9 under the head " Of Insurance Other than Life," we find section 1684 reading as follows: " Corporations formed for the purpose of insurance other than life, shall be governed by the provisions of chapter one of this title except as modified by the provisions of this chapter." The sections of the Code first quoted are found in chapter 5 of title 9, under the caption " Of Mutual Fire Assessment Associations."

The allegations of plaintiff's petitions with reference to the nature of their business are as follows:

Plaintiff avers that it was duly organized as a mutual insurance corporation, with authority to do business in the State of Iowa, in the year 1892, and that it has complied with all the laws of the State of Iowa, relating to mutual insurance, and that this plaintiff since the date of its organization has annually received its certificate to do an insurance business in the State of Iowa, under the seal of the office of the Auditor of State. That thereafter and continuously, and at all times since, this plaintiff has continued to conduct the business of mutual insurance within the State of Iowa, upon the purely mutual plan, collecting assessments, paying losses, and in all things, conducting business in full compliance with the laws of the State of Iowa.

In the fifth paragraph of the petitions it is alleged:

Plaintiff avers that, under the authority of the State of Iowa, it has established a large business in the State of Iowa, with numerous agents and officers and clerks, and has a large number of contracts outstanding with its members amounting in the aggregate to many thousands of dollars, that its annual receipts are about $100,000, on account of assessments received for insurance written in the State of Iowa. That it at all times has complied with all the laws of the State of Iowa; that it is a solvent corporation; that it has met all of its obligations and conducted its business in all respects in accordance with law and in a prudent and business-like manner, and to the satisfaction of its members.

Plaintiffs contend that they are organized under chapter 2 of title 9 as benevolent institutions; but this manifestly cannot be true, for, under the allegations of their petitions, they were each doing an insurance business. *Grimes v. Northwestern Legion of Honor,* 97 Iowa, 315, and cases cited. They are not simply benefit societies or benevolent associations; and if they incorporated they must have done so under chapter 1 of title 9 of the Code. That they had the right to do so is already established. *Corey v. Sherman,* 96 Iowa, 114. So that, if incorporated to do business under the general incorporation laws of the State, it must

have been under chapter 1, title 9, and not under chapter 2 of that title. This then gives them the designation of corporations for pecuniary profit. As to the county mutuals referred to in the act now challenged, we shall have something to say during the course of this opinion.

To the proposition that the act should be held not to apply to corporations like those now complaining, it is sufficient to say, that such taxes are a part of the expenses of con-

2. TAXATION OF MUTUAL INSURANCE COMPANIES: constitutionality of statute.
ducting the business; and that by section 1765 of the Code, such corporations are authorized to make assessments to meet expenses. Even were there no such provision they would undoubtedly have the inherent right to meet all legitimate and proper expenses by assessments. We are then brought directly to the question: Does the act in question offend against any of the federal or State constitutional limitations or statutes? That the tax imposed is a business or license tax is conceded. See *Scottish Co. v. Herriott,* 109 Iowa, 606. But it is said that in exempting county mutual associations, not organized for pecuniary profit, an unjust and illegal discrimination is made against the plaintiffs; that the law is not uniform in its operation; that it grants special privileges to some companies to the exclusion of others; and that it offends against section 2 of article 8 of the state Constitution which provides that " the property of all corporations for pecuniary profit, shall be subject to taxation the same as that of individuals." When it is once conceded as it must be that the tax is not a property one, the last objection is disposed of, so that we shall give this question no further attention.

Further claim is made that the act offends against the fourteenth amendment to the federal Constitution, in that it denies to plaintiffs the equal protection of the laws. There

3. SAME.
is no doubt that the equal protection of the laws which any artificial person may claim relate to those which apply to similar associations within the jurisdic-

tion of the State.    And it is equally true that the State may
impose a license or business tax upon one occupation or busi-
ness, and not upon another, and may, within certain limits,
provide for exemptions from taxation; but when it selects the
objects to be taxed, the burden must, as a general rule, be
spread over all or it will be unequal and unlawful.    As said
by Cooley in his work on Taxation, " but when for any reason
it (referring to a business or license tax) becomes discrimina-
tive between individuals of the class taxed, and selects some
for an exceptional burden the tax is deprived of the necessary
element   of   legal   equality   and   becomes   inadmissible."
*Standard Oil Co. v. City,* 66 S. C. 37 (44 S. E. 377); *Beck-
ett v. Mayor,* 118 Ga. 58 (44 S. E. 819); *Mutual Reserve Co.
v. City,* 109 Ga. 73 (35 S. E. 71).    This rule, however, does
not prevent the Legislature from selecting certain classes of
persons, occupations or property for taxation according to its
discretion, provided that its classification is not wholly arbi-
trary and unreasonable.    *Hoge v. R. R. Co.,* 99 U. S. 348
(25 L. Ed. 303); *People v. Coleman,* 4 Cal. 46 (60 Am.
Dec. 581); *Braun v. City,* 110 Ill. 186; *Quartlebaum v.
State,* 79 Ala. 1; *State v. French,* 17 Mont. 54 (41 Pac.
1078, 30 L. R. A. 415); *Marmet v. State,* 45 Ohio, 63 (12
N. E. 463); *Singer Co. v. Wright* (C. C.), 33 Fed. 121.

With these general statements we shall now take up the
specific objections urged against the law.    First as to its
being unequal in its operation.    That it applies alike to all
insurance corporations or associations organized under the
laws of the State, and exempts all county mutuals, not or-
ganized for pecuniary profit, is clear.    That being true it
operates equally upon all corporations in a like situation;
and this is all that is required to establish uniformity.
*Primghar Bank v. Rerick,* 96 Iowa, 238, and cases cited.

4. CERTIFICATION    Is the act discriminatory in character?
OF INSURANCE    Does it operate uniformly upon all corpora-
COMPANIES:
taxation.    tions of the same class?    Equality of taxation
does not mean that taxes may not be required of some which

are not exacted of others; but that all persons subject to the same conditions must be uniformly taxed. *Warren v. Henly,* 31 Iowa, 38; Primghar Bank v. Rerick, *supra.*

Long before the passage of the act·in question, the Legislature had created two classes of mutual fire assessment insurance associations, one known as county mutuals, and the other as State mutuals. See section 1760 of the Code before quoted. These two classes were distinguished largely by the amount of business which they might reasonably do, by the territory in which they were allowed to operate, and by the nature of acquaintanceship which the members might have with each other, and there are other provisions which do not apply to both. This classification was made long before the statute in question was passed; and that the Legislature had the power to make it there can be no question. Many kinds of insurance companies are authorized by our laws, and no one has ever doubted the power of the Legislature to create and regulate the different kinds of insurance companies. If the Legislature may thus create and regulate them there is no doubt of its right to provide regulations which shall apply to one kind of company and not to another; and the giving of a privilege to one class is no infraction of the rule against special or class legislation. These domestic insurance companies are creatures of the legislative will, and each class may be regulated according to the desires of its creator, so long as the regulative act is applicable to each and all of the particular class.

That there is good ground for distinguishing between county and State mutual assessment companies is clear. But even if there be doubt as to this proposition, it is not so clear that the classification is so arbitrary as to call

5. SAME.    for judicial interference. That the business of insurance is a matter of State legislation and regulation is so well settled as to need no citation of authority in support of the proposition. Moreover, the act in question clearly distinguishes between State mutual associations, which, as we

have said, must have been organized as corporations for pecuniary profit, and county mutuals which are not so organized. That this is a valid classification no one, we think, will dispute. This being true, the law is not subject to the objection that it is class legislation, that it gives to some favors not granted to all, and does not afford all the equal protection of the law. As supporting these propositions, see Hoge v. R. R. Co., *supra;* Cooley on Constitutional Limitations (6th Ed.) pp. 480–481; *City of Des Moines v. Bolton,* 128 Iowa, 108; *People v. Havnor,* 149 N. Y. 195 (43 N. E. 541, 31 L. R. A. 689, 52 Am. St. Rep. 707). When it is remembered that each and all of these insurance companies owe their existence to legislative will, the case is much more simple than if they were natural persons; for, in the creation of such artificial persons, the State may undoubtedly divide them into classes; and if it may do that, it may impose burdens upon some which it does not impose upon others of another class.

But it is argued that, notwithstanding the difference in name, State and county mutuals are engaged in the same business, are competitors in trade, and that the same burdens should be imposed upon all. Let us look at this proposition for a moment. By the act in question, no matter what the character of the plaintiffs in these actions, each is doing an insurance business and is subject to the tax. This proposition, while denied in one part of appellants' argument, is practically conceded in another. If it is subject to the tax, and is organized under the chapter with reference to corporations for pecuniary profit by reason of the statutes we have hitherto quoted, then all county mutuals organized in the same way and doing the same kind of business must pay the tax. The mere fact that the State officials fail to do their duty is no reason for declaring the law unconstitutional. On the other hand, no matter how these plaintiffs are organized. they are subject to the tax, and all corporations of the same kind are subject to the same tax. That

is to say, if ordinary county mutuals are organized under the same law as plaintiffs and are doing the same kind of business, then they are not the county mutuals which are organized not for pecuniary profit. If there be county mutuals organized into voluntary associations, which are not organized for pecuniary profit, then they, and they alone, are exempt from the tax, while others organized as plaintiffs are should be held liable therefore, unless, by the act in question, the Legislature undertook to classify all county mutuals as corporations not for pecuniary profit, which it unquestionably had the right to do, for such a classification must, of necessity, be somewhat arbitrary.

This much is certain. The Legislature has, in its wisdom, treated all county mutuals either as corporations not for pecuniary profit, or has recognized that some of them are, and that some of them are not. In either event, plaintiffs have no ground for complaint. If the Legislature has classed them all as corporations not for pecuniary profit, and State mutuals as corporations for pecuniary profit, that is the end of the case; for such a classification is not one which we may disturb. On the other hand, if it has undertaken to create two classes of county mutuals, one for pecuniary profit, and the other not, then plaintiffs have no cause for complaint unless it be to call upon the State officials to do their duty in the premises. The language of the section is not clear, but, no matter what its construction in this respect, it is not unconstitutional. We are not called upon at this time to say just what is meant by the words " county mutuals not organized for pecuniary profit." Our duty now is simply to determine the constitutionality of the act; and it is obligatory on us to sustain it if there be any tenable ground upon which such a conclusion may be reached.

II. The act does not come within the provisions of the fourteenth amendment to the federal Constitution. The State may adjust its system of taxation, and may impose specific taxes upon different trades, business, or professions

without regard to this amendment. *Barbier v. Connolly,* 113

U. S. 27 (551 Sup. Ct. 357, 28 L. Ed. 923);

3. SAME.      *Bell's Gap. R. R. v. Penn.,* 134 U. S. 232 (10 Sup. Ct. 533, 33 L. Ed. 892); *Home Ins. Co. v. New York,* 134 U. S. 594 (10 Sup. Ct. 593, 33 L. Ed. 1025); Scottish Co. v. Herriott, *supra.* The civil rights act, known as section 1977 of the Revised Statutes, has no application to the case. *Virginia v. Rives,* 100 U. S. 313 (25 L. Ed. 367); *Gibson v. Miss.,* 162 U. S. 565 (16 Sup. Ct. 904, 40 L. Ed. 1075).

III.   Lastly, it is insisted that the property of plaintiffs is exempt under section 1304 of the Code of Iowa, which exempts the property of religious, charitable, and educa-

7. EXEMPTION FROM TAXA- TION.      tional institutions. This is not true for two reasons. First, the tax is not a property tax, but a business or license exaction; and, second, plaintiffs are not religious, charitable, or educational institutions. We decline to adopt some of the recent definitions of insurance given by high officials in the New York investigations. They are not benevolent institutions. *State v. Critchett,* 37 Minn. 13 (32 N. W. 788).

The provisions of the State Constitution with reference to the taxation of the property of corporations, the same as that of individuals has no application, for the reason that the tax imposed by section 1333d is not a property tax, but rather a franchise or business one. With the policy or expediency of these laws we have nothing to do. It may be that our insurance laws are crude and conflicting; that they need careful revision; that it is not wise to make such classifications as we find in these laws, and that county mutuals whether for pecuniary profit or not, should pay a franchise tax, but these are not the problems before us. We find a definite classification made by the Legislature, and a franchise or business tax, applying alike to all members of the particular class. *Hoge v. Railroad Co., supra.* The classifications made are not so arbitrary as to justify our

interference even had we the power of controlling insurance legislation, and the classification of companies doing an insurance business. This latter we do not have, and taking the situation as we find it, we discover no good reason for declaring the law in question invalid.

The rulings on the demurrers were correct, and the judgment in each case is *affirmed.*

SHERWIN, J., taking no part.