# STATE OF MARYLAND
## *vs.*
## EDGAR T. MERCER.

*Police power and trade regulations: discrimination against non-residents; auctioneers.*

Chapter 633 of the Acts of 1914, regulating the licensing of auctioneers in Carroll County, is not an Act passed in virtue of the police power; it is merely a trade regulation and, being in discrimination against non-residents, it is unconstitutional and void.                                    p. 265

The Legislature has not the power to enact, under the guise of the police power, an Act which shows on its face that it has no reference to the protection of the public.          p. 265

*Decided February 1st, 1918.*

Appeal from the Circuit Court for Carroll County. (FORSYTHE, JR., J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Philip B. Perlman, Assistant to the Attorney General,* and *Albert C. Ritchie, the Attorney General,* for the appellant.

*Guy W. Steele* (with whom were *James H. Steele* and *Alexander H. McCormack* on the brief), for the appellee.

CONSTABLE, J., delivered the opinion of the Court.

The appellee was indicted in the Circuit Court for Carroll County for an alleged violation of the provisions of Chapter 633 of the Acts of 1914, a local law of that county. The Act is as follows:

"AN ACT to regulate the licensing of auctioneers in Carroll County.

"Section 1. *Be it enacted by the General Assembly of Maryland,* That no person not a resident of said county shall be entitled to engage in business as an auctioneer in Carroll County unless he shall have first taken out a license as hereinafter provided.

"Section 2. *And be it further enacted,* That it shall be the duty of the Clerk of the Circuit Court of said county to issue auctioneer licenses to such persons as may apply for and be entitled to them under this Act, and according to the conditions and provisions of this Act; the amount so received from said licenses to be paid to the Board of County School Commissioners of Carroll County to be credited by them to the school fund of said county.

"Section 3. *And be it enacted,* That such applicant for such license shall pay the yearly sum of twenty-five dollars ($25) if he be a resident of the State of Maryland outside of said county, and the sum of fifty dollars ($50) if he be not a resident of this State; and no license shall be issued by said clerk of said county to any person until the aforesaid license fee shall have been paid and until such person has made oath as to his place of residence.

"Section 4. *And be it enacted,* That every person conducting a sale as auctioneer in violation of section 1 of this Act shall be guilty of a misdemeanor, and upon conviction thereof before a justice of the peace be fined not less than ten dollars and not more than fifty dollars in the discretion of the justice of the peace or court, the party so convicted shall have the right of appeal to the Circuit Court for Carroll County, and in default of the payment of said fine and cost of prosecution by the person so convicted he shall be sentenced to imprisonment in the county jail for a period of not exceeding thirty days.

"Section 5. *And be it enacted,* That this Act shall take effect from the first day of May, A. D. 1914."

The appellee, a resident of Frederick County, was indicted for conducting a sale, as auctioneer in Carroll County, not having first taken out a license to engage in that business in that county.   He demurred to the indictment upon the ground that the Act was void contravening section 2 of Article 4, and section 1 of the 14th Amendment to the Constitution of the United States.   The lower Court sustained the demurrer, and, for the judgment entered thereon, the State appealed.

It is claimed on behalf of the State that this Act was passed in virtue of the police power of the State.   While it is true that it has long been acknowledged, universally, that the licensing of auctioneers may be brought under the police powers, yet that fact does not permit a Legislature to enact, under the guise of the power, an Act which shows upon its face that it has no relation to the protection of the public, and claim for it the characteristics which go with a law validly passed in the exercise of that power.   And it is plain from a reading of the statute, in question, that the object of the legislation was but one, and that was—to afford to the residents of Carroll County, in the auctioneering business, an advantage over auctioneers, both within the State but outside of the limits of Carroll and those without the limits of the State.   It is, in fact, not a police regulation, but a trade regulation.

We had very recently to consider the validity of the Act requiring licenses to be obtained by junk dealers throughout the State.   The size of the fee for such licenses being based upon the population of the cities or counties.   *State* v. *Shapiro* 131 Md. 168.

Judge Urner, speaking for the Court, had this to say: "The Legislature is under no constitutional obligation, either Federal or State, to observe a definite rule of uniformity in the enactment of its license laws.   It is not required to establish the same license system and regulations for all the interests and political divisions over which its authority extends. It has the right to make separate and different provisions for

distinct classes and areas. The exercise of such power does not conflict with the constitutional right to the equal protection of the laws, or to due process of law, *if the prescribed regulations operate equally and uniformly upon the class within the area affected, and their limitations are not clearly unreasonable."* See the great number of both Federal and State decisions cited therein and upholding the proposition therein stated.

There can be no controversy respecting the power of the State, or of any of its municipal sub-divisions, upon which the authority is conferred by Legislature, to enact and enforce laws regulating and controlling the business of auctioneering. But can it be contended in this case that "the prescribed regulations operate equally and uniformly upon the class and within the area affected?"

The classification attempted is based entirely upon residence, so that those residing in Carroll County are entirely free from any license tax, while those without that area, and wishing to do business within it, are burdened with the necessity of paying to secure that right. Similar statutes embodying substantially the same restrictive operation have come before the courts in numerous instances, and have almost without exception been declared unconstitutional and void. *State* v. *Wagener,* 69 Minn. 206; *State* v. *Nolan,* 108 Minn. 170; *Brownback* v. *Burgess,* 194 Penn. St. 609; *Com.* v. *Hana,* 195 Mass. 262; *State* v. *Whitcom,* 122 Wis. 110; *Graffty* v. *Rushville,* 107 Ind. 502; *Morgan* v. *Orange,* 50 N. J. L. 389; *Beckett* v. *Savannah,* 118 Ga. 58; *State* v. *Snyder,* 182 Penn. St. 630; *Marshalltown* v. *Blum,* 58 Iowa, 184; *In re Camp,* 38 Wash. 393; *Sayre* v. *Phillips,* 16 L. R. A. 49; *State* v. *Montgomery,* 47 Atl. 165; *Templar* v. *State Board of Examiners,* 131 Mich. 254; *Daniel* v. *Richmond,* 78 Ky. 542; *Simrall* v. *Covington,* 9 L. R. A. 556.

In *Com.* v. *Snyder, supra,* the State of Pennsylvania attempted by an Act, applicable only to Perry County, to discriminate between merchants residing in the county, and

those without. The Court had this to say about that Act: "It is a denial to citizens resident outside of Perry County of equal rights in business with those who live within the county, on the sole ground of their residence. It is a trade regulation for the protection of the merchants of that county against competition from all who live beyond the county lines. It is a barrier built by the State of Pennsylvania about a single county to exclude therefrom the citizens of the rest of the commonwealth, and the rest of the United States, for the benefit of merchants living within the enclosure. This cannot be done: *Welton* v. *Missouri,* 91 U. S. 275; *Sayre Borough* v. *Phillips,* 148 Pa. 482. It is unnecessary to enlarge upon this question. It is enough to state the well settled rule and apply it to the statute under consideration."

In *State* v. *Nolam, supra,* the City of Hastings passed an ordinance requiring "itinerant merchants and transient vendors" to procure a license from the city before selling anything within the city limits, but entirely exempted *bona fide* residents of the city from the provisions of the ordinance. The Court after quoting from the State Constitution and the Fourteenth Amendment, and section 2 of Article 4 of the Constitution of the United States, said: "That the ordinance under consideration contravenes all these guaranties is quite clear. There can be no controversy respecting the power of the State, or of any of its municipal subdivisions upon which the authority is conferred by legislation, to enact and enforce laws regulating and controlling the business of hawking and peddling; but such laws must be general, and apply uniformly to all citizens, irrespective of residence. They must conform to State and Federal constitutions, and not be based upon class distinction, or deny to any citizen the equal protection of the law. This is elementary, and requires no reference to authorities. But this ordinance does not meet the requirements. It expressly exempts from its operation residents of the City of Hastings, and applies only to those who

reside outside of its corporate limits. This is a discrimination between citizens of the State and the United States, and not warranted."

The appellant cites and relies upon *Wright* v. *May,* 127 Minn. 150; in which the Court upheld the validity of an Act denying to any but voters the right of engaging in the occupation of auctioneering. It is clear, from the reasoning in that case, that the Court upheld the Act upon the ground that it was passed in the exercise of the police power. We cannot be guided by that decision; for, as we said above, we think it is absolutely apparent that the present Act was not passed in the exercise of that power. Although this Act purports to be an Act to regulate the licensing of auctioneers, it contains not one word as to the regulation of the business, other than the securing of a license. There is no requirement for a bond upon which persons having grievances could resort for relief. There is no provision that persons applying for licenses should submit certificates of their good character. In fact, all that is required of them is that they make application and pay the fee for their licenses. All of these facts show that the solicitude of those responsible for this Act was not for the purpose of securing the protection of the public from dishonest auctioneers, but was for the purpose of securing a monopoly of the business for Carroll County auctioneers.

We are conscious of the fact that in enactments pertaining to the fish and game, often rights to their taking are given to residents of the locality or county where such game and fish are found to the exclusion of non-residents of that locality and are upheld by the courts. But these decisions rest upon the theory that as the ownership of fish and game rests in the State, and not in the people, it may confer such exclusive right of fishing or hunting without infringing the guarantee of the Federal Constitution.

Being of the opinion that the Court below properly sustained the demurrer to the indictment, we will affirm the judgment.

*Judgment affirmed.*