(93 South. 802)

MAURY et al. v. STATE.    (1 Div. 255.)

(Supreme Court of Alabama.    June 29, 1922.)

Constitutional law ⬾230(3)—Licenses ⬾7 (3)—Tax on real estate brokers loaning money held valid.

Acts 1919, p. 430, schedule 101, providing for an annual tax of $50 on "each person, firm or corporation engaged in buying, selling or renting real estate on commission," when "such person, firm or corporation also engages in the business of loaning money, as an incident merely to the real estate business," is not repugnant to Const. Ala. § 35, or Const. U. S. Amend. 14, but is a reasonable classification.

Anderson, C. J., and Sayre and Miller, JJ., dissenting.

Appeal from Circuit Court, Mobile County; Joel W. Goldsby, Judge.

Action by the State of Alabama against James F. Maury and George W. Unruh, as partners composing the firm of Maury & Unruh, to recover license taxes. From a judgment overruling demurrers, defendants suf-

fered judgment and appeal. Transferred from Court of Appeals under Acts 1911, p. 449, § 6. Affirmed.

The complaint alleges that the defendants, during the year commencing October 1, 1919, and ending October 1, 1920, and during the year commencing October 1, 1920, and ending October 1, 1921, were engaged in the business of buying, selling, and renting real estate situated in this state on commission, and as an incident merely to said real estate business were also engaged in the business of loaning money. It is further alleged that the statutes impose upon persons engaged in such real estate business, for the business of loaning money as an incident thereto, a license of $50 payable to the state and also 50 per cent. of such state license for the use of the county in which such business is carried on, and that the defendants having failed to pay such license and being reported as delinquent, became further liable for a penalty. Count 1 claims $88.75 as license and penalty covering the year 1919–20, and count 2 claims $86.25 as license and penalty covering the year 1920–21.

The defendants demurred to the complaint on the ground, among others, that the statute imposing the license in question was unconstitutional and void. The trial court overruled the demurrer, and, the defendant declining to plead further, rendered judgment for plaintiff in the sum of $175.

Smiths, Young, Leigh & Johnston, of Mobile, for appellants.

Schedule 101, page 430, Acts 1919, requiring the payment of an additional tax by the agents mentioned therein, who engage in the incidental business of loaning money, is in violation of the Constitutions of Alabama and of the United States. 148 Ala. 539, 41 South. 970; 118 Ala. 143, 22 South. 627, 72 Am. St. Rep. 143; 177 Ala. 248, 59 South. 305; 142 Ala. 552, 38 South. 67, 70 L. R. A. 209, 110 Am. St. Rep. 43; 16 Ala. App. 70, 75 South. 276; 179 Ala. 54, 60 South. 392, Ann. Cas. 1915C, 691; 118 Ga. 58, 44 S. E. 819; 132 Md. 263, 103 Atl. 570; 106 N. W. 153; 108 Minn. 170, 122 N. W. 255; 69 Minn. 206, 72 N. W. 67, 38 L. R. A. 677, 65 Am. St. Rep. 565; 184 U. S. 540, 22 Sup. Ct. 431, 46 L. Ed. 679; 183 U. S. 79, 22 Sup. Ct. 30, 46 L. Ed. 92; Const. Ala. §§ 1, 35; Const. U. S. Amend. 14.

Harwell G. Davis, Atty. Gen., J. J. Mayfield, Asst. Atty. Gen., and Brooks & McMillan, of Mobile, for the State.

The license schedule must stand, unless the unconstitutionality thereof clearly appears. 184 Ala. 283, 63 South. 985; 180 Ala. 473, 61 South. 597; 172 Ala. 160, 54 South. 605; 79 Ala. 1; 16 Ala. App. 491, 79 South. 396; 206 Ala. 134, 89 So. 304.

The law presumes a license adopted by the Legislature to be reasonable, and the burden of showing that it is not reasonable is on him who challenges it. 188 Ala. 262, 66 South. 95; 147 Ala. 682, 39 South. 353; 198 Ala. 393, 73 South. 525; 10 Ala. App. 440, 65 South. 408; 204 Ala. 469, 86 South. 65; 164 Ala. 482, 51 South. 523, 27 L. R. A. (N. S.) 627. The power of licensing occupations is vested absolutely in the Legislature, and when exercised for revenue purposes is not subject to the constitutional provisions regarding equality and uniformity that apply to taxes. Such licenses are valid as long as they do not discriminate between members of the same class. 118 Ala. 143, 22 South. 627, 72 Am. St. Rep. 143; 204 Ala. 469, 86 South. 65; 16 Ala. App. 440, 78 South. 638; 147 Ala. 682, 39 South. 353; 16 Ala. App. 491, 79 South. 396; 142 Ala. 552, 38 South. 67, 70 L. R. A. 209, 110 Am. St. Rep. 43; 150 Ala. 74, 43 South. 482; 198 Ala. 383, 73 South. 525; 151 Ala. 473, 44 South. 113, 12 L. R. A. (N. S.) 568, 125 Am. St. Rep. 33; 120 Ala. 190, 24 South. 728; 112 Ala. 557, 20 South. 915; 120 Ala. 623, 24 South. 952; 121 Ala. 28, 25 South. 622; 155 Ala. 149, 46 South. 237.

ANDERSON, C. J. Schedule 70 of the Acts of 1919 requires a license tax of all persons, firms, and corporations whose principal business is lending money. The only other part of the act which provides for the payment of a tax by people who lend money is schedule 101, Acts 1919, p. 430, which is as follows:

"Each person, firm or corporation engaged in buying, selling or renting real estate on commission, when such real estate is situate in this state shall pay the state the following license tax; in cities and towns of ten thousand inhabitants and over, fifteen dollars; in cities and towns of less than ten thousand and more than five thousand inhabitants, ten dollars; in all other places, five dollars: *Provided that if such person, firm or corporation also engages in the business of loaning money as an incident merely to the real estate business, they shall also pay an additional license of fifty dollars.*"

It will be observed that the schedule does not impose a license tax on real estate agents, based on a sliding scale according to the volume of business done by such agents, but it undertakes to impose two separate and distinct taxes, one on the real estate agent as such, and the other a separate and distinct tax—an "additional tax," to use the words of the statute—on such agents who engage in the business of lending money as an incident to their main business, and the statute contemplates the issuance of two separate licenses.

The avocation sought to be taxed by the italicized portion of the above-quoted schedule is the lending of money as an incident merely to the real estate business. Lending

money is an avocation separate and distinct from buying, selling, or renting of real estate on commission, and the attempt is made to impose an additional license tax on this separate avocation when engaged in by a real estate agent, without imposing a like tax on all others engaged in the same avocation; i. e., lending money as an incident merely, to the principal business in which they are engaged.

The statute singles out and marks for taxation those who buy, sell, or rent real estate "on commission," and leaves the field free, open and untrammeled to lawyers, doctors, insurance agents, stock and bond brokers, whether doing business upon commissions or otherwise, and every other person, lending money, including even persons buying, selling, and renting real estate otherwise than upon commissions, to engage in the business of lending money as an incident to their principal business, without the payment of any such tax, and without hinderance of any nature. Had the law imposed a license tax on all who engaged in lending money as incidental to any commission business, it would probably have been valid, because all who engage in the avocation of lending money incidentally to any commission business would have been taxed, and all engaged in such business would have been on an equal footing.

This tax is not upon all money lenders or all real estate agents, or even upon all real estate agents who operate upon a commission basis; nor is it a tax upon all who may engage in lending money as an incident to their regular business. It is simply an attempt to regulate the business of real estate agents who operate upon a commission basis by burdening the lending of money by them by the imposition of an unwarranted tax, which said tax violates both the state and the federal Constitution under the authority of City Council v. Kelly, 142 Ala. 552, 38 South. 67, 70 L. R. A. 209, 110 Am. St. Rep. 43; Ala. Cons. Co. v. Herzberg, 177 Ala. 248, 59 South. 305; Mefford v. Sheffield, 148 Ala. 539, 41 South. 970.

A tax quite similar to this was condemned in the case of Beckett v. Mayor of Savannah, 118 Ga. 58, 44 S. E. 819; and while the Georgia court applied a constitutional provision not identical to any one in our own Constitution, yet the reasoning in the opinion against the validity of said tax is an apt illustration of its repugnancy to section 35 of our Constitution, as well as the Fourteenth Amendment to the federal Constitution. This Georgia case, supra, has been cited and followed in State v. Mercer, 132 Md. 263, 103 Atl. 570, Iowa Mut. Ass'n v. Gilbertson, 129 Iowa, 658, 106 N. W. 153; and State ex rel. Greenwood v. Nolan, 108 Minn. 170, 122 N. W. 255.

A majority of the court, however, composed of McCLELLAN, SOMERVILLE, GARDNER, and THOMAS, JJ., are of the opinion, and so hold, that the above provision is not repugnant to the state or federal Constitution, that it is but a reasonable classification for purposes of taxation, and that the Kelly Case, supra, as explained in the case of Birmingham v. O'Connell, 195 Ala. 60, 70 South. 184, is inapt.

The judgment of the circuit court is affirmed.

ANDERSON, C. J., and SAYRE and MILLER, JJ., dissent.