BERT VILAS, Appellant, v. IOWA STATE BOARD OF ASSESSMENT & REVIEW et al., Appellees.

No. 43903.

MAY 11, 1937.

Charles E. Pendleton, for appellant.

John H. Mitchell, Attorney General, Z. Z. White, County Attorney, and Clair E. Hamilton, for appellees.

MITCHELL, J.—Bert Vilas and his son, doing business as a copartnership under the firm name of Vilas & Son, are engaged in the produce business at Storm Lake, Holstein and Sioux Center. Each of the partners filed an individual income tax return, as provided by chapter 82 of the Acts of the 45th General Assembly. Bert Vilas reported that he owed a tax of $40.33. The theory upon which his individual return was prepared was that he was not required to file a return or pay income tax on account of his share of any of the profits received by the partnership from business carried on outside the State of Iowa. The Iowa State Board of Assesment and Review, not being satisfied with the individual return or the partnership return, audited the books of the partnership. Upon this audit being made it was shown that the net income of the partnership for the taxable year was $30,722.31, which, added to each partner's salary deducted, made a total of $35,447.31. Of this amount Bert Vilas received $2,400 in salary and 75% of the profits of the business. His share of the net profits of the partnership was $23,041.73, which, added to his salary already received, made $25,441.73 as his distributive share of the partnership profits. The board therefore made an additional assessment against Bert Vilas in the sum of $1,032,22, together with penalty of $51.61, and interest from April 1, 1935. A notice of the additional assessment was forwarded to him, as provided by the act, but he refused to pay the additional assessment and commenced this action to enjoin the collection of the tax, claiming that the income tax was unconstitutional and that it violated not only the Constitution of the State of Iowa but also the Federal Constitution. The Iowa State Board of Assessment and Review, and its members, filed answer. There was a trial, at which evidence was offered and arguments were made. The lower court dismissed the petition and rendered judgment against the plaintiff for the costs. Being dissatisfied, he has appealed.

■■ It is the claim of the appellant that the income tax as passed by the legislature of Iowa is unconstitutional. There is one rule of construction of statutes universally recognized which we must keep in mind. Every legislative act is presumed to be constitutional and every intendment must be indulged in by the courts in favor of its validity. A statute will not be declared unconstitutional unless it is so clearly and plainly in contravention of the constitutional limitations and its guarantees as to leave no reasonable doubt as to its unconstitutionality. If there be a doubt the courts will declare the act constitutional. With that thought in mind we proceed to discuss the various interesting questions raised.

■■■ I. It is strenuously argued that chapter 82 of the Acts of the 45th General Assembly, Extra Session, is lacking in uniformity, discriminates against appellant, and is in violation of section 6 of Article I of the Constitution of Iowa, which is as follows:

"All laws of a general nature shall have a uniform operation; the General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities, which, upon the same terms shall not equally belong to all citizens."

Bert Vilas and his son are individuals who conduct their business as a copartnership. The discrimination of which they complain is as follows: (1) Section 28 of the Act exempts corporations from paying any income tax upon that part of their business · attributable to trade, sales or business outside the boundaries of the state, altho individuals, partnerships and fiduciaries are granted no such exemption. (2) The graduate rate provided for in section 5 of the said chapter is not uniform, as required by section 6 of our Constitution. (3) Corporations are taxed at the rate of 2% on their net income under section 28 of the said chapter, yet individuals, partnerships and fiduciaries who may be engaged in the same line of business are taxed at 5% as soon as their net income reaches five thousand dollars.

The very questions here raised have lately been before the Supreme Court of the United States. We quote from the decision in the case of Lawrence v. State Tax Commission of Mississippi, 286 U. S. 276, 52 S. Ct. 556, 76 L. Ed. 1102, 87 A. L. R. 374, 376, as follows:

"Appellant, a citizen and resident of Mississippi, brought the present suit to set aside the assessment of a tax upon so much of his net income for 1929 as arose from the construction by him of public highways in the State of Tennessee. The taxing statute was challenged on the ground that in so far as it imposes a tax on income derived wholly from activities carried on outside the state, it deprived appellant of property without due process of law, and that in exempting corporations, which were his competitors, from a tax on income derived from like activities carried on outside the state, it denied to him the equal protection of the laws.

"The obligation of one domiciled within a state to pay taxes there, arises from the unilateral action of the state government in the exercise of the most plenary of sovereign powers, that to raise revenue to defray the expenses of government and to distribute its burdens equably among those who enjoy its benefits. Hence, domicile in itself establishes a basis for taxation. Enjoyment of the privileges of residence within the state, and the attendant right to invoke the protection of its laws, are inseparable from the responsibility for sharing the costs of government. See Fidelity & C. Trust Co. v. Louisville, 245 U. S. 54, 58, 62 L. Ed. 145, 148, L. R. A. 1918C, 124, 38 S. Ct. 40; Maguire v. Trefry, 253 U. S. 12, 14, 17, 64 L. Ed. 739, 750, 751, 40 S. Ct. 417; Kirtland v. Hotchkiss, 100 U. S. 491, 498, 25 L. Ed. 558, 562; Shaffer v. Carter, 252 U. S. 37, 50, 64 L. Ed. 445, 455, 40 S. Ct. 221."

And at page 283 of 286 U. S., at page 558 of 52 S. Ct., at page 1107 of 76 L. Ed., at page 379 of 87 A. L. R. of that opinion we read:

"The statute relieves domestic corporations from the tax only in so far as their income is derived from activities carried on outside the state. The appellant is thus compelled to pay a tax from which his competitors, if domestic corporations, are relieved, and this, it is urged, is so plainly arbitrary as to infringe the equal protection clause.

"But, as there is no constitutional requirement that a system of taxation should be uniform as applied to individuals and corporations, regardless of the circumstances in which it operates, acceptance of this contention would relieve the appellant from the burden which rests on him to overcome the presump-

tion of facts supporting constitutionality, which attaches to all legislative acts, and would require us to assume that there is no state of facts reasonably to be conceived which could afford a rational basis for distinguishing, for taxation purposes, between income of individuals and that of domestic corporations, derived from business carried on without the state. Lindsley v. Natural Carbonic Gas Co., 220 U. S. 61, 78, 79, 55 L. Ed. 369, 377, 378, 31 S. Ct. 337, Ann. Cas. 1912C, 160; Rast v. Van Deman & L. Co., 240 U. S. 342, 357, 60 L. Ed. 679, 687, L. R. A. 1917A, 421, 36 S. Ct. 370, Ann. Cas. 1917B, 455; O'Gorman & Young v. Hartford F. Ins. Co., 282 U. S. 251, 257, 258, 75 L. Ed. 324, 327, 328, 72 A. L. R. 1163, 51 S. Ct. 130.

"What the local conditions are in Mississippi and its neighboring states with respect to businesses like the present, carried on across state lines by individuals and corporations, does not appear. How the statutory provisions now in question are related to others by which a permissible divergence in state policy with respect to the taxation of corporations and of individuals may be effected, is not shown. See General American Tank Car Corp. v. Day, 270 U. S. 367, 373, 70 L. Ed. 635, 638, 46 S. Ct. 234; Interstate Busses Corp. v. Blodgett, 276 U. S. 245, 251, 72 L. Ed. 551, 554, 48 S. Ct. 230; Farmers & M. Sav. Bank v. Minnesota, 232 U. S. 516, 529 et seq., 58 L. Ed. 706, 712, 34 S. Ct. 354. We cannot say that investigation in these fields would not disclose a basis for the legislation which would lead reasonable men to conclude that there is just ground for the difference here made. The existence, unchallenged, of differences between the taxation of incomes of individuals and of corporations in every federal revenue act since the adoption of the 16th Amendment, demonstrates that there may be."

And so in the case at bar the appellant has offered no competent evidence to show that there is any discrimination as between him, as an individual, and any domestic corporation conducting a like business in the same territory. The fact that some of the adjoining states have a lower income tax rate than Iowa does not sustain the assertion that the Iowa law is discriminatory against its own residents. There are certain taxes which domestic corporations must pay that individuals do not pay.

It must be remembered that section 6, Article I, of the Con-

stitution of Iowa, and section 1 of the 14th Amendment to the Federal Constitution, do not provide that taxes must be uniform, regardless of the nature of the tax, Section 6 of Article I of the Iowa Constitution says:

"The General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities, which, upon the same terms shall not equally belong to all citizens."

This constitutional provision is therefore not violated so long as the law operates uniformly upon all in the same class. That is what was done in this case. Individuals as a class must pay a tax, and domestic corporations as a class must pay a certain rate.

■■■ II. Appellant claims that chapter 82 provides for a lower rate of taxation upon the property of corporations than upon the property of individuals, and is in violation of section 2 of Article VIII of the Constitution of the State of Iowa, which reads:

"The property of all corporations for pecuniary profit, shall be subject to taxation, the same as that of individuals."

This court has been confronted before with this question. In the case of Scottish U. & N. Ins. Co. v. Herriott, 109 Iowa 606, at page 613, 80 N. W. 665, 667, 77 Am. St. Rep. 548, we find:

"Whether the act is in contravention of the article of the constitution providing that the property of all corporations for pecuniary profit shall be subject to taxation the same as that of individuals depends upon whether the tax in question is a tax on property, a tax upon a business or privilege, or a license tax or condition imposed as a prerequisite to the right of foreign corporations to do business in the state. We are willing to concede that, if the tax imposed by the act is simply a tax on property it is vulnerable to the constitutional provision just referred to, and perhaps interdicted by other provisions of both state and federal constitutions. But if it is a tax on business, or on the privilege of doing business in the state, or if it is simply a condition imposed by the state as a prerequisite to the right of the corporation to do business in the state, then it is not vulnerable to any constitutional provision. There is no requirement of either the

federal or state constitution that taxes on business or on privileges shall be uniform. Pembina Consol. Silver Mining & Milling Co. v. Pennsylvania, [125 U. S. 181, 8 S. Ct. 737, 31 L. Ed. 650], supra. It is permissible for a state to exact a license fee, and also impose a tax on the business done. Cooley, Taxation (1st Ed.), pp. 385, 386; People v. State Treasurer, 31 Mich. 6; People v. Thurber, 13 Ill. 554.''

And in the case of Iowa Mutual Tornado Insurance Assn. v. Gilbertson, 129 Iowa 658, at page 669, 106 N. W. 153, 157, this court said:

''Lastly, it is insisted that the property of plaintiffs is exempt under section 1304 of the Code of Iowa, which exempts the property of religious, charitable, and educational institutions. This is not true for two reasons. First, the tax is not a property tax, but a business or license exaction; and, second, plaintiffs are not religious, charitable, or educational institutions. We decline to adopt some of the recent definitions of insurance given by high officials in the New York investigations. They are not benevolent institutions. State v. Critchett, 37 Minn. 13, 32 N. W. 787, 788.''

''The provisions of the State Constitution with reference to the taxation of the property of corporations, the same as that of individuals has no application, for the reason that the tax imposed by section 1333d is not a property tax, but rather a franchise or business one.''

Thus, following the cited cases, we hold that the tax imposed by chapter 82 of the Acts of the 45th General Assembly, Extra Session, is an excise tax, and, it necessarily follows that section 2, Article VIII, has no application. Before it can be said that the act does contravene the constitutional provision relative to taxation of corporations for pecuniary profit, it must appear clearly and definitely that said act imposes a property tax, that is, that income is property and that the tax is a tax on property.

III. Appellant claims that chapter 82 is in part a graduated income tax and a tax upon the acquiring of property, and is thereby lacking in uniformity and discriminates against appellant in that it violates section 1, Article I; section 6, Article I; section 30, Article III, of the Constitution of Iowa.

Section 1, Article I, is as follows:

"All men are, by nature, free and equal, and have certain inalienable rights—among which are those of enjoying and defending life and liberty, acquiring, possessing and protecting property, and pursuing and obtaining safety and happiness."

Section 1 of Article I, and section 6 of Article I of the Constitution of Iowa contain practically the same guarantees found in the "due process" clause and "equal protection of the law" clause of the 14th Amendment of the Federal Constitution. This was well stated in McGuire v. Chicago, B. & Q. Ry. Co., 131 Iowa 340, at page 348, 108 N. W. 902, 905, 33 L. R. A. (N. S.) 706, where this court said:

"Summing up their argument against the validity of the statute, counsel narrow the question to the proposition that it violates the fourteenth amendment to the Constitution of the United States, as well as the somewhat similar provisions found in our state Constitution. They say: 'There are but two provisions of the Constitution of the United States relied upon by appellee in this case. These are found in the fourteenth amendment. The substance of these provisions is that no State shall pass any law that will deprive any person of the right of life, liberty, and property, or deprive any person of the equal protection of the law. There are two provisions in our State Constitution, substantially similar: Section 1, Article I (Code, p. 60), and Section 6, Article I (Code, p. 61).' "

**▮▮▮** The legislature had the power to classify residents of this state for taxation under an income tax law, according to their income. There is nothing so discriminatory about such an act as would render it unconstitutional. True it is that every law which classifies for taxation is somewhat discriminatory, but that alone will not render it repugnant to a constitutional provision requiring uniformity. Before this court declares a statute unconstitutional on that ground it must be made to appear that the classification is so unreasonable and arbitrary that no state of facts can be assumed which will sustain it. Section 30 of Article II provides that the legislature shall not pass local or special laws in the instances therein set out.

In the case of State ex rel. Welsh v. Darling, 216 Iowa 553, at page 559, 246 N. W. 390, 393, 88 A. L. R. 218, we find:

"If the act in question must be found to be special or local in character, it is because its application is presently and prospectively limited to the city of Des Moines. The enactment by the legislature of the chapter may possibly have been inspired by those primarily interested in the city of Des Moines. On this point we are not advised. There is nothing, however, in the character of the act itself indicating that the legislative intent was to so restrict its application. It is possible and perhaps probable that considerable time will necessarily intervene before any other city of this state, by the process of ordinary normal growth, will attain the prescribed population. If however and when they do, the act by its very terms will at once become applicable thereto. No matter how many cities of this state shall attain the required population, all will come under the provisions of the act, and none will be excluded."

Justice De Graff, speaking for this court in the case of Iowa Motor Vehicle Assn. v. Board of Railroad Commissioners, 207 Iowa 461, 221 N. W. 364, 367, 75 A. L. R. 1, cited the case of State ex rel. Budd v. Hancock, 66 N. J. Law, 133, 48 Atl. 1023, as follows:

"A law is special in a constitutional sense, when, by force of an inherent limitation, it arbitrarily separates some persons, places, or things from others, upon which, but for such limitation, it would operate. The test of a special law is the appropriateness of its provisions to the objects that it excludes. It is not, therefore, what a law includes that makes it special, but what it excludes. If nothing be excluded that should be contained, the law is general. Within this distinction between a special and a general law, the question in every case is whether any appropriate object is excluded to which the law, but for its limitations, would apply. If the only limitation contained in a law is a legitimate classification of its objects, it is a general law. Hence, if the object of a law have characteristics so distinct as reasonably to form, for the purpose legislated upon, a class by itself, the law is general, notwithstanding it operates upon a single object only; for a law is not general because it operates upon every person in the state, but because every person that can be brought within its predicament becomes subject to its operation."

And so in the case at bar, this law cannot be said to be a

"local or special" law because all the persons will come within the classification of the law as their income reaches the amount provided in the law.

█ █ █ IV. Appellant contends that chapter 82 is unconstitutional because it gives to the Board or its agents or representatives the right to examine the books, papers, records and memoranda of the taxpayer, and thereby violates section 8 of Article I of the Constitution of the State of Iowa, which is as follows:

"The right of the people to be secure in their persons, houses, papers and effects, against unreasonable seizures and searches shall not be violated; * * *"

In looking at the act we find that there are provisions for an examination of the books and records of the taxpayer, and to require the attendance and testimony of witnesses for the purpose of ascertaining facts in connection with the income return. It further provides that:

"Where the Board finds the taxpayer has made a fraudulent return, the costs of said hearing shall be taxed to the taxpayer. In all other cases the costs shall be paid by the State."

And then provides for the manner in which testimony shall be taken.

This court in the case of Finn v. Winneshiek District Court, 145 Iowa 157, at page 166, 123 N. W. 1066, 1069, said:

"The proceedings did not amount to an unreasonable 'search and seizure' as those terms are used in the fundamental law. Protection is afforded by the Constitution against unreasonable searches and seizures of persons, houses, papers, and effects, but these provisions of the Constitution have no reference to regularly prescribed and orderly proceedings for obtaining testimony. As a rule, they have reference to criminal or *quasi* criminal proceedings or to forfeitures of property. See Boyd v. U. S., 116 U. S. 616, 6 S. Ct. 524, 29 L. Ed. 746. Also the history of such provisions as given in Cooley's Constitutional Limitations (6th Ed.) 364-365, et seq. The taking of testimony for a civil case, in an orderly and regular way, does not amount to a search or a seizure within the meaning of these limitations. Robinson v. Richardson, 13 Gray (Mass.) 454; State v. Slamon, 73 Vt. 212, 50 Atl. 1097, 87 Am. St. Rep. 711; In re Chapman,

166 U. S. 661, 17 S. Ct. 677, 41 L. Ed. 1154. We are well satisfied that no constitutional right of the plaintiff has been violated by the orders made.''

In the case of 'Iowa Loan & Trust Company v. District Court of Polk County, 149 Iowa 66, at page 71, 127 N. W. 1114, 1116, this court said:

''The constitutional guaranty against unreasonable searches and seizures is not in our judgment violated by the order. Nor will it be by an execution thereof. The provisions of the Constitution have no reference to regularly prescribed and statutory methods for obtaining evidence, and the acquiring of evidence in the statutory manner to be used in a case is not a search or seizure within the meaning of the Constitution. Cooley's Constitutional Limitations, 364; Robinson v. Richardson, 13 Gray (Mass.) 454; In re Chapman, 166 U. S. 661, 17 Sup. Ct. 677, 41 L. Ed. 1154; Finn v. District Court, supra.''

The appellant calls our attention to the case of State v. Tonn, reported in 195 Iowa 94, 191 N. W. 530, and especially to the dissenting opinion of the late Justice Weaver. The writer of this opinion does not hesitate to say that if he had been a member of the court at the time that the opinion in State v. Tonn was filed he would have joined in the dissenting opinion; yes, in even stronger language than the dissenting judge used would he have objected to the opinion in that case. However, the case at bar is not similar to the case of State v. Tonn, for, in that case and under that opinion an officer had a right, this court said, to go into a home or the office of any business man, ransack private papers and take away with him such as he chose to take.

The statute under discussion in the case at bar prescribes what the board can do. It simply provides for a hearing in an orderly manner, at which the taxpayer has a right to be present.

■■■ V. It is claimed that chapter 82 provides for the taking of private property, for private use, under the guise of taxation, and therefore is in violation of section 9 of Article I of the Constitution of the State of Iowa, which is as follows:

''* * * but no person shall be deprived of life, liberty, or property, without due process of law.''

An examination of the income tax law shows that the following is the procedure:

(1) . The taxpayer files his return.

(2) The return is examined by the board or person in its employ.

(3) If the board discovers that a complete return has not been made, it determines the correct amount of tax together with interest and 5% penalty.

(4) The statute requires that notice of additional assessment be given to the taxpayer.

(5) Section 24 then provides that the taxpayer may apply for a revision of the tax, interest and/or penalties at any time within 90 days from the date he receives notice of additional assessment. It is mandatory that the board grant the hearing.

(6) The board shall notify the taxpayer by registered mail of its findings and shall refund to the taxpayer any amount paid in excess of the amount found to be due.

(7) The taxpayer may appeal to the District court of the county in which he resides, or in which his principal place of business is located, within 60 days after receiving the notice.

(8) After the determination in the district court he may appeal to the supreme court as provided in other cases.

(9) Section 26 provides for jeopardy assessment, but the assessment is not final until a hearing is had.

(10) A lien may be filed by the State, but if it is filed during the time an appeal is pending it must be released after either the board or the court determines that the tax claimed under the additional assessment is not due, providing however the correct amount of tax has been paid.

We do not find in this procedure anything that robs the appellant of due process of law. The board, before it makes the assessment final must give the taxpayer notice and an opportunity to be heard. In the case at bar, this record shows, notice was given to the appellant.

▮▮▮ VI. It is next contended that chapter 82 provides for the unlawful and unconstitutional delegation of legislative power to the Iowa State Board of Assessment and Review, in violation of section 1 of Article III of the Constitution of the State of Iowa, which is as follows:

"The legislative authority of this State shall be vested in a General Assembly, which shall consist of a Senate and House of

Representatives; and the style of every law shall be, 'Be it enacted by the General Assembly of the State of Iowa.' "

The provision placed in the Constitution by the framers, conferring upon the legislature the power to make the laws, has been consistently interpreted by the courts as denying to the legislature the right to delegate that power to any other body or authority, and the legislature cannot relieve itself of this responsibility by attempting to pass it on to some other body. The legislature is composed of the chosen representatives of the people, and in that body is placed the sole law-making power by the people.

Probably one of the most important cases which has been decided by this court is the case of Hubbell v. Higgins, 148 Iowa 36, where at pages 43-4-5, 126 N. W. 914, 917, Ann. Cas. 1912B, 822, the late Justice Evans, speaking for the court, said:

"It is next argued that the act in question confers upon the hotel inspector legislative powers. This contention is based upon certain general provisions contained in the statute which call for the exercise of judgment on the part of the hotel inspector. By its terms such act is not applicable to hotels of 'approved fireproof construction.' It is argued that this expression is not known to the trade, and therefore that it can mean nothing except that the hotel inspector may arbitrarily approve or disapprove a given hotel as being of 'fireproof construction' or otherwise. The act also provides that 'approved sanitary conditions' shall be maintained, and that cesspools and privies shall be properly cleaned and disinfected as often as necessary to maintain them in such sanitary condition. It is argued that the inspector may arbitrarily determine whether a hotel is thus maintained in a sanitary condition or not, and that the statute contains no definition which will protect the hotel keeper against such arbitrary conduct. Other analogous provisions of the act are presented to our attention which provide opportunities, as is claimed, to the inspector to act arbitrarily and oppressively. It may be noted first that these very provisions which are thus arrayed as fatal defects in the law were manifestly intended to give the law flexibility and to make it less technical and less onerous to the hotel keeper. The ultimate purpose and final object of the law is clearly set forth. This object may be attained by the hotel keeper by the specific methods pointed out in the statute, or by

such other methods as the hotel keeper may choose, provided he attain the result. The fallacy in the argument at this point is the assumption that the hotel inspector may arbitrarily, in a given case, find the facts to be otherwise than as they truly are. The inspector is himself amenable to the law and can proceed only under the law and in accordance with the facts as they shall be. The power of the inspector in such a case has been set forth by the Supreme Court of Massachusetts in this wise: 'The power to make rules and regulations in the nature of subsidiary legislation may be delegated by the Legislature to a local board or commission; such rules being subject to be tested in the courts to determine whether they reasonably are directed to the accomplishment of the lawful purpose of the statute under which they were made.' Welch v. Swasey, 193 Mass. 364 [79 N. E. 745, 118 Am. St. Rep. 523, 23 L. R. A. (N. S.) 1160].

"The act under consideration does not purport to confer upon the inspector any arbitrary power. It does require him to determine in given cases whether a hotel is of 'fireproof construction.' If 'yea,' it is an approved fireproof construction within the meaning of the statute. If 'nay,' then otherwise. But this would not empower the inspector to say arbitrarily that a given hotel was not of 'fireproof construction' when in truth it was of such fireproof construction. Nor have we any doubt but that such an attempted act on the part of the inspector could be called in question by any aggrieved party by proper action in court. And the same may be said concerning the other analogous features of the act which we have already referred to."

In Hildreth v. Crawford, 65 Iowa 339, at page 343, 21 N. W. 667, 669, we find the following:

"The plaintiff insists that 'the creation of a board of officers, with legislative and judicial powers, is not only wholly foreign to the subject of the act, as indicated by its title, but is void as an attempt to delegate powers which the constitution vests only in the legislature.' (1) The act regulates the practice of pharmacy by declaring the conditions upon which it shall be practiced, and the class of persons thereto empowered. It contains many regulations, which are readily discovered upon reading the statute. It is obvious that these regulations can be applied and enforced only by officers duly authorized by law. The commissioners are such officers. (2) There are no legislative powers in-

trusted to the commissioners; they can neither make nor unmake a single provision of law. They are charged with the administration of the law, and with no other powers. (3) While in the administration of the law they are intrusted with certain *quasi* judicial powers, they possess none except those of the class which the law confers upon ministerial and executive officers. They exercise discretion which may be *quasi* judicial, just as all officers do. The by-laws and regulations which they are authorized to make pertain to the lawful discharge of the duties imposed upon them. They do not pertain to the rights or liabilities of other persons.''

The appellant has cited and relies mainly on the case of Goodlove v. Logan, 217 Iowa 98, 251 N. W. 39, but there is nothing in that opinion that would prohibit the legislature from authorizing the board or commission, or officer, to make investigations and determine when a person or class comes within the operation of the law. Nor does it prohibit the legislature from authorizing a board or commission to adopt rules or regulations for the proper administration of the law, so long as those rules do not take the form of laws themselves, or encroach upon the duties of the legislature.

Section 53 of the act is as follows:

''The board shall have the power and authority to prescribe all rules and regulations not inconsistent with the provisions of this act, necessary and advisable for its detailed administration and to effectuate its purposes.''

The legislature did not delegate its power, but merely authorized the board to adopt rules and regulations not inconsistent with the provisions of the act, for the purpose of administering the act. The rates are fixed by the legislature, the board merely determines when an individual comes within the classes prescribed by the legislature as being taxable under said rates.

VII. Appellant complains that the act is unduly burdensome, discouraging and unfair; that it handicaps the energetic, industrious and progressive in his race with the indifferent and idle; that it penalizes the successful business man by making him pay a higher rate on a graduated scale on his income, and thus discourages enterprises employing labor, drives capital into tax-exempt bonds, increases the unemployment burden upon

public funds; that it gives special advantage to the farmer, due to the fact that the per capita current income of farmers is considerably lower than that of the nonfarm population; a substantial portion of the farmer's income is received in non-cash items which are consumed by the farmer's family and therefore not reported as taxable income; that the income tax in Iowa is one of the highest levied by any state in the Union, and that many states in the Union do not have income tax laws and their citizens, altho receiving Iowa-earned income, escape all state income taxes.

Much of this argument might be effective before the legislature, but this court is not interested in the question of whether the income tax law, from the standpoint of public policy, is a good or bad thing for the people of this state. To be able to find fault with the law is not to demonstrate its invalidity. Courts do not make the laws; the legislature is charged with that duty and responsibility, and if in its judgment the income tax is an advisable means of raising taxes to carry on the various functions of government, this court will not undertake to say whether or not that judgment was founded upon a sane basis. This court is interested only in the question of whether the passage of this act was in conflict with the Constitution of this state and of the nation.

Careful consideration of the various and many propositions ably argued by appellant's counsel convinces us that the legislature had the right to pass the act. Upon the whole record we find the lower court was right in dismissing appellant's petition.

It necessarily follows that its judgment must be, and it is hereby, affirmed.—Affirmed.

Chief Justice and all Justices concur.